ELLIS N. PHILLIPS, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.

49 N. W. 2d 698

Filed November 6, 1951. No. 33032.

*Casey & Chovanec,* and *Warren C. Schrempp,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *William T. Gleeson,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

An information charged defendant with unlawful possession of certain described instruments and tools, with intent feloniously to break and enter into a building containing valuable property. Upon a plea of not guilty, he was tried to a jury and found guilty as charged. His motion for new trial was overruled, and in the light of plaintiff's previous record, as was done and approved in Maher v. State, 144 Neb. 463, 13 N. W. 2d 641, the trial court sentenced defendant to serve four years in the Nebraska State Penitentiary. In that connection, the sentence imposed was less than the five year maximum authorized by section 28-534, R. R. S. 1943.

Therefrom defendant prosecuted error to this court, assigning substantially that the trial court erred: (1) In failing to sustain defendant's motion to quash the information; (2) in failing to sustain defendant's plea in abatement for want of a preliminary hearing because of an alleged fatal variance between the original complaint, which allegedly did not charge an offense under section 28-534, R. R. S. 1943, and the information, which admittedly did allege an offense thereunder; (3) in the admission and exclusion of certain evidence; (4) in the

refusing and giving of certain instructions; and (5) that the verdict was not sustained by the evidence but contrary thereto and contrary to law. We conclude that the assignments should not be sustained.

In the light of the record before us, the first assignment of error may be considered as waived. In that regard, defendant conceded in his brief that the information properly charged an offense under the statute. His brief argued none of the grounds alleged in his motion to quash, and none of such grounds could logically be said to raise the issue that on the record he had been denied a preliminary hearing. That objection was, however, concededly raised for the first time by his plea in abatement, which the second assignment alleges was erroneously overruled.

Since the information admittedly charged an offense under section 28-534, R. R. S. 1943, then by analogy the second assignment of error has no merit if the original complaint to which defendant pleaded not guilty and upon which he was concededly given a preliminary hearing in the county court was sufficient to charge the same offense. We conclude that it was.

The answer is found in O'Neill v. State, 105 Neb. 824, 182 N. W. 503, wherein it was concluded that an information identical with the complaint at bar in all material respects was sufficient to charge an offense under the same statute. We have heretofore held that a complaint or information is fatally defective only if its allegations can be true and still not charge a crime. Hunt v. State, 143 Neb. 871, 11 N. W. 2d 533.

The essential elements of an offense under section 28-534, R. R. S. 1943, required to be charged and proved by the State, are the possession of instruments or tools suitable for breaking and entering with the intent to use them for a burglarious purpose. O'Neill v. State, *supra;* 12 C. J. S., Burglary, § 69, p. 753; 9 Am. Jur., Burglary, § 86, p. 281, § 88, p. 282; Annotation, 103 A. L. R. 1313. Both the complaint and information alleged

such elements, and sufficiently stated an offense under the statute. The applicable rule is that where the record, as here, clearly shows that an information which charges an offense was based upon the same transaction for which defendant had a preliminary hearing upon a complaint substantially charging the same offense as in the information, then a plea of abatement for variance is unavailing. Wheeler v. State, 79 Neb. 491, 113 N. W. 253; Mills v. State, 53 Neb. 263, 73 N. W. 761. Therefore, we conclude that defendant had a preliminary hearing upon the offense charged in the information, and the second assignment has no merit.

For clarity of discussion we will next turn to the fifth assignment. In doing so, we conclude that evidence adduced by the State was amply sufficient to sustain the verdict. In that regard, defendant offered no competent evidence to refute or deny the State's evidence. In Kitts v. State, 153 Neb. 784, 46 N. W. 2d 158, a case strikingly similar to that at bar in its factual aspects, this court concluded that the material elements of the crime of possession, custody, or control of instruments or tools with intent to break and enter, as defined by section 28-534, R. R. S. 1943, may be proved by direct or circumstantial evidence, and that this court in a criminal action will not interfere with a verdict of guilty based upon the evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt. That opinion also specifically held: "The test by which to determine the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect accused with the crime charged are of such conclusive nature as to exclude every reasonable hypothesis except that of his guilt.

"It is the province of the jury to determine the circumstances surrounding and which shed light upon the alleged crime; and if, assuming as proved the facts

which the evidence tends to establish, they cannot be accounted for upon any rational theory which does not include the guilt of the accused, the proof cannot, as a matter of law, be said to have failed."

Bearing such rules in mind, we have examined the record, which discloses that on July 6, 1950, in Union, Cass County, Nebraska, a witness left his house about 11:30 p. m. to deposit some letters in the post office. As a matter of habit, he walked west through an alley, upon which his house abutted, immediately south of Main Street, which runs east and west, until he came to the first north and south street, intersecting such alley, then proceeded north to Main Street, thence west to the post office. While still walking in the alley and before he had reached its intersection with the north and south street, he observed a car facing north, parked in the street-alley intersection where he never had previously seen one parked. Walking within 10 feet of it, he noticed that there were three persons in the car, and as he approached, it was set in motion, going north toward Main Street, where it stopped at a stop sign, and a man alighted from the vehicle. The witness noted the Douglas County license, No. 1-16375, and observed that the vehicle was a 1939 or 1940 Buick.

A few minutes later, having mailed his letters and stopped in a nearby cafe for a cup of coffee, he retraced his route, and observed that the same vehicle was again parked at the same alley-street intersection. As he approached, it again contained three persons, and, starting up, moved north toward Main Street.

When the witness reached his house, he made a note of the vehicle's license number, and then and there telephoned a part-owner of a liquor store located in the so-called Banning Building so situated as to front on Main Street and abut upon the alley through which the witness had walked.

On cross-examination, the witness affirmed that he had regarded the presence of the vehicle and the persons

in it at that time and place as suspicious, and for that reason had taken particular note of the license number.

Another part-owner of the liquor store testified that at about 12:30 a. m., July 7, 1950, in response to a telephone call from his co-owner, he arrived at Union from Nebraska City, and drove his automobile slowly south down the street which bounded the block containing the Banning Building. At the intersection of the alley this witness also observed a car parked at the same spot as heretofore recited. It was a Buick, and its lights were off.

Such witness then called the sheriff and gave him the license number of the car. The sheriff arrived in Union at approximately 1:00 a. m., and was met by the witness, and riding in the sheriff's car, they permitted the same to coast down Main Street to the west, with lights and motor off, to a point one-quarter of a block east of the street intersection, where the Buick had been observed. They alighted from the vehicle and were walking toward the intersection when a dog started to bark. Thereupon there was a sound of running feet, a door slammed, lights went on, the motor started, and the parked car was driven north into Main Street without stopping, and turned west. The sheriff returned to his car, took off in pursuit, and, sounding his siren, forced the vehicle to the side of the road, where he arrested the three occupants of the car, a Buick bearing license No. 1-16375.

While the party who accompanied the sheriff held the sheriff's revolver on the three men, one of whom was defendant driver of the vehicle, the sheriff searched the car, there finding the following items, which were admitted in evidence: From the rear floor of the car, back of the front seat, he found and removed a pinch bar, two car spring halves, a steel punch, a tire tool, three chisels, a pair of pliers, an axe, a sledge hammer, and a flashlight. Also, he found and removed from under the right front seat a flashlight and two loaded revolvers concealed but readily accessible. The trial court

excluded a pair of black gloves found on the rear floor of the car, and also three nail setters and a screw driver, which the sheriff had taken from the person of one Orrin T. Fasnacht, who was alone in the back seat of the car.

At the sheriff's direction, three men present at the arrest went into the east-west alley immediately south of Main Street to inspect the rear of the building. There they found the east window on the rear of the Banning Building over the liquor store open one or two inches; a board fitted into the interior casing obstructed further elevation of the window; and the sill bore indentation marks. The lower sash of the window was removed later that morning and the pinch bar and punch taken from the car, upon being inserted by the sheriff, fitted the marks found on the window. The window had been closed on July 6 and prior to that day had borne no marks of any instrument. There was some dried putty on the window sill, and a white substance still adhered to the pinch bar when it was removed from the car. Such substance dropped off the bar during the defendant's preliminary hearing.

The defendant, in response to questions put to him by the sheriff immediately after his arrest, denied knowing that the guns were in the car, said that he did not know to whom the tools belonged, and that the car belonged to his brother. The man in the back seat at the time the car was searched said that some of the tools belonged to him.

The sheriff, on the basis of his experience and training as a law enforcement officer, testified that in his opinion the tools removed from the car operated by defendant were suitable and capable of being used for breaking and entering buildings. We conclude that by whatever test the evidence was sufficient to sustain the verdict.

When the instruments and tools were offered in evidence by the State, defendant objected to their admis-

sion for want of foundation. They were admitted over such objections, and the third assignment of error contended that the trial court erred in doing so. The record discloses that the State was required and did show by competent evidence, in addition to circumstances heretofore recited, that: (1) Defendant was operating the motor vehicle immediately prior to his arrest; (2) the tools were observed on the floor of the vehicle by the sheriff and other witnesses; (3) they were removed therefrom in the presence of defendant, the other two men in the car, and other witnesses; (4) they remained in the custody of the sheriff from the time of their removal from the car until their production in court; (5) with one immaterial exception heretofore noted, they were in the same condition at the trial as they were at the time of removal from the car; and (6) they were suitable and capable of being used for breaking and entering buildings. Defendant has pointed out in the brief no respect in which foundation was insufficient. As a matter of fact, under the circumstances heretofore recited, we conclude that ample foundation was laid for their admission.

Defendant also complained because the trial court excluded an exhibit purporting to be an information filed in the same court against one Orrin T. Fasnacht. The clerk of the district court, as a witness for defendant, identified the information only as one "filed in the case of State of Nebraska vs. Lloyd D. Jacks and others." When it was offered in evidence by defendant, the State objected to its admission as irrelevant, incompetent, and immaterial. The objection was sustained, whereupon counsel for defendant said: "This offer is made for the purpose of showing that Orin T. Fasnacht is charged with the crime of possession of the burglary tools, the same tools, being those with which this defendant at the bar is charged with; this offer being made for the purpose of showing that, by the admission of the State, the tools were in the ownership and possession of someone

other than the defendant at this bar." The State then objected to such offer as "irrelevant, incompetent, and immaterial. Tends to neither prove or disprove any issue in this case * * * Not the best evidence." The objection was sustained and we conclude that the trial court properly did so.

The information itself did disclose that one Orrin T. Fasnacht, not otherwise identified, was charged with the crime of possession of burglary tools. However, it did not disclose that they were the same tools as those involved in this case, or by analogy that they were in the ownership and possession of someone other than defendant, and in that regard, defendant produced no evidence to sustain any such contention.

In any event, the fact that defendant was separately charged with the same offense would not be a controlling element. As stated in 12 C. J. S., Burglary, § 69, pages 754 and 755: "To convict defendant of the crime of possessing burglar's tools and implements, the state must show that he was in possession thereof in a legal sense of the term 'possession,' although it need not prove an actual possession, or that the tools were taken from the person of defendant. Possession, for the purposes of such statutes, may be joint or individual, and two or more may be in possession of burglar's tools where they have the power of control and an intent to control jointly. * * * In a prosecution for possession of burglar's tools and implements, the ownership thereof is immaterial." Also, as stated in 9 Am. Jur., Burglary, § 86, p. 281: "The possession may be actual or constructive. Unless expressly provided, possession upon one's person is not necessary. Two persons may have constructive possession or one may have actual possession and the other, constructive possession." And again in section 87, p. 282: "The possession of burglarious implements with a guilty intent may be joint as well as several; and where the guilty intent of several is manifested by their joint act, it becomes a joint offense."

See, also, Annotation, 103 A. L. R. 1314, and State v. Furlong, 216 Iowa 428, 249 N. W. 132, wherein similar tools were also found in a car occupied by three men, as in the case at bar. It follows that the exhibit was entirely immaterial, irrelevant, and incompetent in any manner to prove the offer as made.

The fourth assignment charges that the trial court erred in refusing to give defendant's requested instructions Nos. 1, 2, 3, and 4, and in the giving of instructions Nos. 1, 6, 9, and 13. We conclude that the contention has no merit.

In Jones v. State, 147 Neb. 219, 22 N. W. 2d 710, this court held: "It is the duty of the court to instruct the jury on the law of the case, whether requested so to do or not; and an instruction or instructions which, by the omission of certain elements, have the effect of withdrawing from the consideration of the jury an essential issue or element of the case, is erroneous; but where the jury is instructed generally upon the law, and when the instructions given do not have the effect above stated, error cannot be predicated upon the failure of the court to charge upon some particular phase of the case unless a proper instruction was requested by the party complaining." Also, as stated in Owens v. State, 152 Neb. 841, 43 N. W. 2d 168, quoting with approval from Davis v. State, 51 Neb. 301, 70 N. W. 984: " 'When complaint is made of the refusal of the district court to give an instruction asked, the burden is upon the party complaining to show, not only that he was probably prejudiced by the refusal of the court to give the instruction, but he must also show that the entire instruction was correct as a proposition of law and applicable to the facts in evidence in the case.' " Such cases are controlling here.

In that connection, defendant's requested instruction No. 1 would have erroneously told the jury among other things that: "In this connection, you are instructed that to have possession one must control the object ex-

clusive of others and must have the right to exclude others from meddling with it; in other words, possession means actual control and management." The court properly refused to give the instruction.

In Moore v. State, 148 Neb. 747, 29 N. W. 2d 366, this court held: "Under our code of criminal procedure the law does not distinguish between principals in the first and second degrees, and whoever aids, abets, or procures another to commit any offense may be prosecuted and punished as if he were the principal offender.

"The same rule as to the information, conduct of the case, and punishment, applicable to a principal in fact now governs his aider, abettor, or procurer, and no additional facts need to be alleged in an information against the latter than are required against his principal."

In that connection, defendant's requested instruction No. 2 would have erroneously told the jury that: "There is no allegation or proof in this case of conspiracy or joint enterprise; therefore, if you find that the tools and instruments alleged, were owned and in the possession of someone other than the defendant Ellis N. Phillips for any purpose whatsoever, the possession cannot be imputed to this defendant and your verdict should be one of not guilty." The court properly refused to give such an instruction. Further, the foregoing authoritatively discloses that, contrary to defendant's contention, instruction No. 13, given by the trial court, properly stated the applicable rule. See, also, McMahon v. State, 70 Neb. 722, 97 N. W. 1035. Such instruction was not erroneously given.

Defendant's requested instruction No. 3 would have erroneously told the jury that: "You are instructed that the intent to break and enter must exist at the same time as the possession complained of and proved, and that if, at the time it is alleged that the tools were found in the automobile, the defendant had no intent to break and enter a building containing property of value, then you must return a verdict of not guilty as to this de-

fendant." It will be noted that the instruction erroneously confined defendant's intent to the time the tools were found in the automobile after his arrest. The crime, if one had been committed, was complete at the moment of arrest, and at all pertinent times prior thereto as well, while defendant possessed the tools with intent to break and enter. The instruction was properly refused.

Defendant's requested instruction No. 4 would have erroneously told the jury with regard to the two revolvers found concealed but readily accessible under the front seat of the automobile which he was driving, that: "* * * the fact that there has been testimony that two revolvers were found in the car in which defendant was, would not, of itself, be wrongful or unlawful, as it is no crime against the laws of the State of Nebraska to carry in an automobile a loaded or unloaded revolver."

In that connection, section 28-1001, R. R. S. 1943, containing exceptions having no application here, makes it a felony to carry a revolver concealed on or about his person. In Bright v. State, 125 Neb. 817, 252 N. W. 386, a conviction was affirmed where the evidence disclosed that defendant was carrying a revolver concealed but readily accessible either in a motor vehicle operated by him or on his person while operating the same. The weight of authority sustains such position. See, 56 Am. Jur., Weapons and Firearms, § 10, p. 996; Annotation, 50 A. L. R. 1534; Annotation, 88 A. L. R. 807. The instruction was properly refused.

In Hampton v. State, 148 Neb. 574, 28 N. W. 2d 322, this court held: "An instruction will not be held to be prejudicially erroneous merely because of a harmless imperfection which cannot reasonably be said to have confused or misled the jury to the prejudice of the party complaining." Instruction No. 1, given by the trial court, could not for any reason have been confusing or misleading, and without further discussion it is sufficient to say that it comes squarely within the fore-

going rule. It was not prejudicially erroneous.

Defendant complained that instructions Nos. 6 and 9, given by the trial court, were prejudicially erroneous because they contained the words "possession, custody or control" when the information used only the word "possession," thus imposing an erroneous burden upon defendant. Instruction No. 9 simply recited the pertinent parts of the statute defining the crime. Instruction No. 6 told the jury: "The material allegations and elements in the amended information necessary to be established by the evidence beyond a reasonable doubt in order to convict the defendant of the crime charged are:

"1. That on or about July 7th, 1950, in the County of Cass and State of Nebraska, the defendant, Ellis N. Phillips, had in his possession, custody or control, certain instruments or tools as alleged in the amended information, suitable for burglarious purposes.

"2. That such possession, custody or control of said instruments or tools was with the intent on his part, feloniously, to break and enter some building containing valuable property.

"If you find from the evidence beyond a reasonable doubt that the State has established each of the foregoing elements, then it will be your duty to find the defendant guilty of the crime as charged in the amended information; but if the State has failed to so establish each of the foregoing elements by the evidence beyond a reasonable doubt, then it will be your duty to find the defendant not guilty."

At the outset it will be seen that the additional burden about which defendant complains was placed on the State rather than the defendant, who received the benefit thereof.

On the other hand, the words "possession, custody or control" as used in the statute do not mean three different things or state three different situations or elements of guilt. As stated in Smith v. R. F. Brodegaard & Co., 77 Ga. App. 661, 49 S. E. 2d 500: "They express

an alternative of terms, definitions, or explanations of the same thing in different words. They mean substantially the same thing, i. e., that the property is within the power and dominion of the defendant. It is hardly conceivable that a person could be in possession of personal property without having some kind of custody or control over the property, or could have it in his custody without some character of control or possession, or in his control without some measure of custody or possession. 'The word "or", when used not to connect two distinct facts of different natures, but to characterize and include two or more phases of the same fact, attended with the same result, states but a single ground, and not the alternative.' 46 C. J., 1125 (4). This rule of construction has been recognized and applied by our courts in both criminal cases and civil cases." See, also, Wilson v. State, 153 Tex. Cr. 270, 219 S. W. 2d 86; Boyd v. Travelers Fire Ins. Co., 147 Neb. 237, 22 N. W. 2d 700; McMahon v. State, *supra*. In other words, possession as used in the information embraced custody or control, and instructions Nos. 6 and 9, given by the trial court, did not depart from the issue formulated by the information and defendant's plea of not guilty thereto, nor impose any additional burden upon defendant.

Finding no error in the record prejudicial to defendant, we conclude that the judgment should be and hereby is affirmed.

AFFIRMED.