EDWARD D. KENNEDY, PLAINTIFF IN ERROR, V. STATE OF
NEBRASKA, DEFENDANT IN ERROR.
105 N. W. 2d 710

Filed November 10, 1960.   No. 34806.

*Jack L. Spence,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Cecil S. Bru-baker,* for defendant in error.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This is a criminal case prosecuted in the district court for Douglas County upon an information originally filed February 9, 1959. Count I therein charged that on or about January 12, 1959, defendant, Edward D. Kennedy, was found in Douglas County having in his possession, custody, or control certain described instruments or tools with intent to break and enter into a building containing property of value. Such information charged in count II that on or about the same date in Douglas County said defendant unlawfully carried two described 38-caliber loaded revolvers concealed on or about his person. Thereafter, on September 16, 1959, such information was amended but only by adding count III, which factually charged that defendant was an habitual criminal, having twice theretofore on separate designated dates pleaded guilty in Douglas County to the offense of burglary and been duly sentenced therefor.

Defendant at all times here involved was represented by counsel, and after a plea of not guilty trial was had to a jury upon counts I and II. Defendant's motions to direct a verdict made at conclusion of the State's evidence and renewed at conclusion of all the evidence were overruled and the issues were submitted to the jury. Thereafter, the jury returned separate verdicts finding defendant guilty upon each of said counts. After hearing thereon, defendant's motion for new trial was overruled and a hearing was duly held by the court upon

count III, whereupon defendant was found to be an habitual criminal and was sentenced to serve 15 years in the Nebraska State Penitentiary and to pay all costs of prosecution upon each of counts I and II of the information. However, such sentences were ordered to run concurrently.

Thereafter, defendant prosecuted error to this court, assigning and arguing, as far as important here, that the trial court: (1) Erred in refusing to sustain defendant's two oral motions for continuance, one of which was made at commencement of the trial, and one of which was made thereafter at the conclusion of defendant's evidence and before he rested; (2) erred in not sustaining defendant's motions for directed verdict; (3) erred in not admonishing the jury to disregard certain alleged inflammatory statements made by counsel for the State in closing argument, which allegedly reflected on failure of defendant to take the stand in his own defense and explain the presence of the tools and guns in his car; (4) erred in refusing to sustain defendant's motion for new trial; and (5) erred in finding that defendant was an habitual criminal and sentencing him as such. We do not sustain the assignments.

At opening of the trial, defendant's counsel orally moved for "a continuance on the ground that we did not receive the amended information within time to prepare a proper defense for the trial." In that connection, counts I and II of the amended information were at all times identical with the original which had been on file since February 9, 1959. The information, as amended, simply included count III, which factually charged that defendant was an habitual criminal.

In Jones v. State, 147 Neb. 219, 22 N. W. 2d 710, this court held that: "The charge that one accused of crime is an habitual criminal is not the charge of a distinct offense or crime. It is a direction of attention to facts which under the statute and the crime charged in the

information are determinative of the penalty to be imposed.

"The habitual criminal law does not set out a distinct crime, but provides that the repetition of criminal conduct aggravates the offense and justifies heavier penalties.

"It is proper to set out the aggravation of a criminal offense justifying the heavier penalties contemplated by the habitual criminal law either in the count charging the crime or in a separate count in the information."

Section 29-2221, R. R. S. 1943, provides, in part, that: "(1) Whoever has been twice convicted of crime, sentenced and committed to prison, in this or any other state, or by the United States, or once in this state and once at least in any other state, or by the United States, for terms of not less than one year each, shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal, and shall be punished by imprisonment in the penitentiary for a term of not less than ten nor more than twenty years; Provided, that no greater punishment is otherwise provided by statute, in which case the law creating the greater punishment shall govern.

"(2) Where punishment of an accused as an habitual criminal is sought, the facts with reference thereto must be charged in the indictment or information which contains the charge of the felony upon which the accused is prosecuted, but the fact that the accused is charged with being an habitual criminal shall not be an issue upon the trial of the felony charge and shall not in any manner be disclosed to the jury. If the accused is convicted of a felony and before sentence is imposed, a hearing shall be had before the court alone as to whether such person has been previously convicted of prior felonies. The court shall fix a time for the hearing and notice thereof shall be given to the accused at least three days prior thereto. At the hearing, if the court shall find from the evidence submitted that the

accused has been convicted two or more times of felonies and sentences imposed therefor by the courts of this or any other state, or by the United States, the court shall sentence such person so convicted as an habitual criminal."

In Poppe v. State, 155 Neb. 527, 52 N. W. 2d 422, this court, dealing with a charge that accused was an habitual criminal, held that: "When a proper record of a previous conviction has been produced, it becomes a matter of law for the court to determine whether or not that record establishes a previous conviction for the violation of a statute."

Thus, whether or not defendant was an habitual criminal was not an issue upon defendant's trial of the felonies charged in counts I and II, but was one required to be heard by the trial court alone after the trial was held and defendant was found guilty. Verdicts of guilty on counts I and II were returned October 15, 1959, and hearing by the court alone on count III after notice was not held until December 21, 1959. Thus, defendant had ample time to so present his defense, if any, to count III.

On the other hand, one of defendant's counsel argues that he entered the case as counsel for defendant on October 5, 1959, and was forced to trial on October 13, 1959. However, the record discloses that one of defendant's two counsel who served throughout the trial first appeared in court as counsel for defendant on September 23, 1959, 3 weeks before the jury trial commenced. The original information was filed February 9, 1959, and on August 28, 1959, defendant's then counsel of record was permitted upon application to withdraw as counsel for defendant. On that same day, defendant being an indigent, the public defender of Douglas County was appointed to represent defendant, with the case set for trial September 21, 1959. On September 16, 1959, the amended information was filed, which simply added count III to the original information. De-

fendant was arraigned September 17, 1959. Thereat, with the public defender present and representing him, defendant pleaded not guilty and motion of the public defender for continuance was denied, with trial set for September 21, 1959. However, on motion and for cause shown, the order of September 17, 1959, denying continuance was vacated and the trial was continued until September 28, 1959. On September 23, 1959, defendant, having discharged the public defender as his counsel, appeared in open court with one of his counsel who represented him then and at the trial, and a continuance was granted until September 30, 1959. Trial was not had even on that date because of intervening motions unimportant here, and the cause came on for trial October 13, 1959, whereat before any evidence was adduced one of defendant's counsel made the oral motion for continuance heretofore set forth.

As recently as Svehla v. State, 168 Neb. 553, 96 N. W. 2d 649, we reaffirmed that: "An application for a continuance is addressed to the sound discretion of the trial court and its ruling thereon will not be disturbed unless it appears that the rights of the defendant were prejudiced thereby."

Also, as held in Cox v. State, 159 Neb. 811, 68 N. W. 2d 497, 66 A. L. R. 2d 293: "In determining whether or not the trial court has abused its discretion in refusing to grant a continuance it is proper to look to the entire record in the case." See, also, § 25-1148, R. R. S. 1943.

This record shows that defendant was at all times well aware of the charges against him; and that several months had elapsed since the filing of the information, during all of which time he was represented by and had the services of at least four lawyers, and at least one of those who represented him at the trial appeared as counsel of record 3 weeks before the trial. The record contains no showing by affidavit or otherwise that the granting of a further continuance was required to fairly try the simple issues here involved. We conclude that

the trial court did not abuse its discretion in denying the continuance first requested.

Defendant's second motion for continuance was orally made at conclusion of defendant's evidence just prior to the time he rested. Such motion was purportedly made in order to verify information that there was a material and important witness believed to be incarcerated in Colorado. However, defendant's counsel did not know "whether he has been in jail there or whereabouts there, * * *." The trial court then inquired of defendant's counsel if he was prepared in support of his motion to state the name of the witness and in substance what his testimony might be in support of the motion for continuance. In reply, counsel did not disclose the name of the witness but was evasive and did not say who or where the witness was or what his testimony would be except to state in substance that he believed it was direct testimony showing knowledge of the prior location and ownership of the burglary tools and weapons. With regard to defendant's aforesaid request for continuance, we find in this record no proper showing of the name or whereabouts of such a witness or the materiality of his testimony if such a witness existed or could be found. The whole request and proposal was entirely speculative and conjectural without any proper showing of diligence or materiality. We conclude that the trial court did not abuse its discretion in overruling defendant's second motion for continuance.

In that connection, at the hearing upon defendant's motion for new trial, after a continuance thereof had been granted, the deposition of an unemployed and thrice-convicted felon, who had no permanent address and was then in the Denver County jail on another alleged offense, as was one Bevins hereinafter mentioned, was offered by defendant and received in evidence, purportedly to support his motion for new trial. One of defendant's counsel also testified under oath

that the evidence contained in the deposition was not "actually in the realm of newly discovered evidence; * * *." Evidently, the purpose of offering the deposition was to support defendant's contention that his aforesaid requests for continuance, wherein no showings were made and which were properly overruled, should now in effect be retrospectively granted by the awarding of a new trial. The substance of the deposition was that the witness owned the tools and guns found in defendant's car where he had purportedly thrown them during the early evening of January 12, 1959, in order to avoid being caught in possession thereof and arrested therefor. We find that his testimony was not only immaterial, as heretofore pointed out, but it was also so equivocal, indefinite, fantastic, and incredible that it would reasonably support no other conclusion except that it was false.

In Phillips v. State, 154 Neb. 790, 49 N. W. 2d 698, we reaffirmed that: "In a prosecution for possession of burglar's tools and implements, the ownership thereof is ordinarily immaterial."

Also, in Hubbard v. State, 65 Neb. 805, 91 N. W. 869, this court held that: "The denial of a motion for a continuance in order to secure evidence is not reversible error where it appears that the testimony of the absent witness would be either false or immaterial.

"The refusal of the district court to suspend for an indefinite time the trial of a criminal case to enable the defendant to procure the attendance of a witness is not, in the absence of a showing of diligence, an abuse of judicial discretion." We conclude that the trial court did not err in refusing to give defendant a new trial upon the grounds aforesaid, as contended by him.

We turn then to defendant's contention that the trial court erred in refusing to sustain his motions to direct a verdict of not guilty for insufficiency of the evidence to support a conviction.

Section 28-534, R. R. S. 1943, provides in part: "Who-

ever shall be found having upon him or her, or having in his or her possession, custody or control, any picklock, crow, key, bit or other instrument or tool with intent feloniously to break and enter into any * * * building containing valuable property, shall be deemed guilty of a felony, and punished by confinement in the penitentiary not less than one year nor more than five years."

Also, section 28-1001, R. R. S. 1943, provides in part: "Whoever shall carry a weapon or weapons concealed on or about his person such as a revolver * * * shall upon conviction be fined in any sum not exceeding one thousand dollars or imprisoned in the state penitentiary not exceeding two years; * * *." Thereafter follows a proviso which has no application here.

In Phillips v. State, *supra,* this court concluded that the material elements of the crime of possession, custody, or control of instruments or tools under section 28-534, R. R. S. 1943, with intent to break and enter may be proved by direct or circumstantial evidence.

Therein we also held that: "The test by which to determine the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect accused with the crime charged are of such conclusive nature as to exclude every reasonable hypothesis except that of his guilt.

"It is the province of the jury to determine the circumstances surrounding and which shed light upon the alleged crime; and if, assuming as proved the facts which the evidence tends to establish, they cannot be accounted for upon any rational theory which does not include the guilt of the accused, the proof cannot, as a matter of law, be said to have failed.

"In a criminal case, this court will not interfere with a verdict of guilty based upon the evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt.

"In such a case, the possession may be actual or constructive, and unless expressly provided by statute, possession upon one's person is not necessary. Two persons may have constructive possession or one may have actual possession and the other, constructive possession.

"The possession of burglarious implements or tools with a guilty intent may be joint as well as several, and where the guilty intent of several is manifested by their joint act, it becomes a joint offense.

"The words 'possession, custody or control' as used in section 28-534, R. R. S. 1943, express an alternative of terms, definitions, or explanations of the same thing in different words."

In that opinion we said: "In that connection, section 28-1001, R. R. S. 1943, containing exceptions having no application here, makes it a felony to carry a revolver concealed on or about his person. In Bright v. State, 125 Neb. 817, 252 N. W. 386, a conviction was affirmed where the evidence disclosed that defendant was carrying a revolver concealed but readily accessible either in a motor vehicle operated by him or on his person while operating the same. The weight of authority sustains such position. See, 56 Am. Jur., Weapons and Firearms, § 10, p. 996; Annotation, 50 A. L. R. 1534; Annotation, 88 A. L. R. 807."

The Annotations, 50 A. L. R. 1534, and 88 A. L. R. 807, cite and discuss many authorities dealing with situations comparable with that at bar. They are authority for the conclusion that the manifest object under statutes comparable with section 28-1001, R. R. S. 1943, was to prevent the carrying of concealed weapons and stamp out practices that have been and are fruitful of bloodshed, misery, and death. Thus, the courts generally hold, including our own, that absolute invisibility to other persons is not indispensable to concealment of a weapon on or about the person of a defendant, and that a weapon is so concealed when it is hidden from ordinary observation and is readily accessible on his

person or in a motor vehicle operated by defendant.

In the light of the foregoing rules, we have examined the record which shows that the State adduced the following undisputed evidence: On the night of January 12, 1959, two officers of the Omaha police department were serving as cruiser patrolmen on Radial Highway near Saddle Creek Road and Cuming Street in Omaha. About 9:15 p. m., they saw a 1957 Chevrolet four-door car make a left turn from east to north through a red light signal on Forty-third Avenue and Radial Highway while driving about 25 miles an hour. The officers followed that car and flashed their spotlight through its rear window. As the cruiser car followed the Chevrolet it accelerated its speed, turned east on Izard Street, went through a stop sign at Forty-second Avenue, speeded up to about 60 to 70 or 80 miles an hour, then made a left turn to go south on Fortieth Street to Webster Street, where it attempted to turn east at Fortieth and Webster Streets and the Chevrolet went out of control, struck the curb, and the right door flew open but was closed again. The pursuing police car's red light and siren were on at all times after making the turn at Izard Street, but the Chevrolet continued to accelerate its speed and did not slow down or stop. The streets were patched with ice, and were wet, slushy, and slippery. After rounding the corner of Fortieth and Webster Streets, the Chevrolet started "fish-tailing" and continued to do so for about a block, when it spun around and slid backwards up over the curb into a school fence then came back out a few feet toward the street. However, the officers stopped the cruiser car up against the front bumper of the Chevrolet to prevent further escape and then got out of the cruiser car. During the chase the officers saw three shadows or silhouettes of men through the back window of the Chevrolet as their spotlight was trained upon it. Another police officer in another car also saw the Chevrolet at the time it turned through a red light and

recognized defendant as the driver and one Bevins as another occupant in the front seat. He did not see any other occupant and when the Chevrolet stopped only two men got out. Defendant got out from the driver's side and Bevins got out from the right front seat. The officers recognized both such men from previous history in criminal cases, so, although they offered no resistance, one officer covered them with his sidearms while another handcuffed them. Later, when the Chevrolet was being towed from the curb into the street in order to take it to the police station, screams were heard from under the Chevrolet and another man, wet, cold, and injured somewhat was found hiding beneath the car by clinging to its undercarriage.

When defendant and Bevins got out of the Chevrolet the arresting officer opened a back door of the car and found, visible for the first time, a satchel of tools; an overcoat; and two snub-nosed, fully-loaded, 38-caliber revolvers on the back seat. The satchel was open and some tools protruded therefrom. The two revolvers were lying beside the satchel and on the overcoat in about the center of the back seat, as if thrown there in flight but where they were readily accessible to the occupants of the Chevrolet and invisible until the back doors of the car were open. Another officer arrived at the scene and took pictures of the back seat of the car through an open door. One such picture, showing the tools, coat, and guns so lying on the back seat, was offered and received in evidence.

The satchel contained two steel pinch bars; a steel-handled ax; a coping saw; a 10-pound sledge hammer with the handle sawed off shorter, as is usually done by burglars; a pair of vise-grip pliers; a pair of ordinary pliers; two cold chisels; a center punch; and another punch. A length of six- or eight-strand rope, knotted every 12 or 18 inches, which rope was of the length and type generally used by burglars to get into buildings or to descend from a roof, skylight, or window thereof,

was also found lying on the ground near the right open door of defendant's car.

At the time of defendant's arrest he was asked by an officer: " 'Is that your car?' And he said, 'yes, it is.' I said, 'Are you sure it is not your mother's?' He said, 'No, it is my car, and it is registered to me.' I said, 'What about the tools in the back seat.' He said, 'What tools.' And then I asked him where he was living, and he says 'Out on Dodge Street in the Clay Court.' "

A captain of police in Omaha, then serving in a supervisory position over burglary investigations in the detective bureau, who had 24 years of police experience and had many times investigated burglaries and viewed and examined tools used in burglaries, testified as a witness for the State. He testified that the rope, tools, and weapons found in defendant's car were a most complete set of burglar tools, although, as usual, some of them could be used for legitimate purposes. He also explained and demonstrated how each item found in defendant's car could be used in a burglary. On cross-examination of such witness by defendant's counsel, in answer to a question whether the tools found in defendant's car had been used in a burglary, the captain answered that such tools had been sent to the Federal Bureau of Investigation in Washington where they had been compared with other evidence that had been sent in from this district, and that he had thereafter received from such bureau a report which had been sent to the Omaha police department wherein it was pointed out that two of such tools were positively and conclusively identified as having been used in a burglary of the Scofield Seed Company in Council Bluffs, Iowa, on January 3, 1959. Such report of the bureau was produced in open court for the scrutiny of defendant's counsel and its authenticity and accuracy were not questioned, but the report was not offered and received in evidence.

Defendant did not testify, but he offered the testimony

of two lay witnesses that they owned tools similar to some of those found in defendant's car, and that they had useful legitimate purposes, which, as heretofore shown, the State had admitted.

This court has repeatedly held that: "It is only where there is a total failure of competent proof in a criminal case to support a material allegation in the information, or where the testimony adduced is of so weak or doubtful a character that a conviction based thereon could not be sustained, that the trial court will be justified in directing a verdict of not guilty." Lovings v. State, 158 Neb. 134, 62 N. W. 2d 672. See, also, Salyers v. State, 159 Neb. 235, 66 N. W. 2d 576; Hertz v. State, 160 Neb. 640, 71 N. W. 2d 113. We conclude that the evidence adduced herein was amply sufficient to support a verdict of guilty on counts I and II, and that the trial court did not err in failing to sustain defendant's motions for directed verdict.

Defendant assigned that the trial court erred prejudicially in failing to admonish the jury to disregard misconduct of counsel for the State during argument wherein he related: "He asked him who owned the car, and there isn't any question, Mr. Kennedy said I own the car. He asked again does your mother own the car. No, I own it. Is this car registered in your name? It is my car. Where do you live? In a Motel on West Dodge. What kind of tools does a man use if he is in a Motel on West Dodge? Should he have just any tools." In the first place, we point out that defendant never asked the court to admonish the jury to disregard any statements of the prosecutor and never sought a mistrial because thereof. Counsel for defendant did object to the statement aforesaid simply because "there is no showing in evidence as to occupation" of defendant, and the objection was overruled. It is a fact that there was no evidence adduced with regard to defendant's occupation which would justify his carrying the tools which were found in his car. Thus, every fact related

by the prosecutor in the quoted statement was based on evidence and legitimate inferences drawn therefrom. Also, contrary to defendant's contention, the statement did not reflect in any manner upon defendant's failure to take the stand. In that connection, instruction No. 18 given by the trial court, cautioned the jury that the law did not require defendant to take the stand; that the fact that defendant did not take the stand and testify was not to be considered by the jury in any manner; and that the jurors were not at liberty to draw any inference against him by reason of his failure to take the stand or to speculate in any manner because of his failure to testify.

In Jackson v. State, 133 Neb. 786, 277 N. W. 92, this court held that: "Remarks of the prosecutor in final summation of the evidence to the jury which do not mislead and unduly influence the jury and thereby prejudice the rights of the defendant do not constitute misconduct." See, also, Cramer v. State, 145 Neb. 88, 15 N. W. 2d 323, wherein we held: "An argument by a prosecuting attorney, which is based on the evidence and inferences drawn therefrom, does not ordinarily constitute misconduct." Defendant's assignment with regard to misconduct of counsel for the State has no merit.

Defendant's last assignment of error deals with his claimed invalidity of the first of two prior convictions of defendant for burglary, whereat, as shown by court records and other evidence in this record, defendant had pleaded guilty and was sentenced for such felonies. The State relied upon both such prior convictions at the hearing by the court on count III of the information which charged that defendant was an habitual criminal. Defendant's contention was and is that his first conviction was void because defendant was less than 16 years of age when he was sentenced, therefore he was erroneously sentenced to serve 2 years in the Nebraska State Reformatory. In the first place, we conclude that

defendant failed to establish by any competent evidence that he was less than 16 years of age when he was so convicted and sentenced. The record of his first conviction upon a plea of guilty and his sentence as well, which imports validity, disclosed by judicial recitation that defendant was not less than 16 years of age at the time of his conviction and sentence. This court recently reaffirmed and concluded in Haswell v. State, 167 Neb. 169, 92 N. W. 2d 161, that an unauthorized or erroneous sentence does not void a lawful conviction. In any event the age of an accused when he has been twice convicted, sentenced, and committed to prison on a felony charge has no bearing on the question of whether or not he was an habitual criminal within the statutory meaning thereof.

For reasons heretofore stated, we conclude that in all respects the judgment and sentence of the trial court should be and hereby are affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.