STATE OF NEBRASKA, APPELLEE, v. NATHANIEL GOODWIN, JR.,
APPELLANT.
169 N. W. 2d 270

Filed June 27, 1969. No. 37138.

Paul E. Watts, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

Defendant was convicted of possession of a fire bomb and carrying a concealed weapon. He was fined $100 for carrying the concealed weapon and was sentenced to 1 to 3 years in the Nebraska Penal and Correctional Complex for possession of a fire bomb.

On the evening of March 5, 1968, three officers in a police cruiser were watching for possible attempts to start fires on the north side in Omaha when they were alerted to be on the lookout for a car which had been seen in the vicinity of an earlier fire. They observed a car answering the description given and immediately started to pursue it. The car pulled to the curb and came to a stop when the cruiser was approximately 50 feet away. The cruiser drove to within 4 to 5 feet of the stopped car. During that interval the officers ob-

served the right rear door of the car come partially open and a brown paper sack come out of the car. One of the officers also observed the throwing of a silver object from the front window on the driver's side. After the cruiser stopped, the defendant, who was the owner and driver of the car, came back to the cruiser.

The sack which was found near the car contained three liquor bottles filled with a liquid described as ethylene dichloride and diethyl lead, a highly inflammable and explosive material. The silver object was identified as a bottle with a rag sticking out of the top, filled with the same liquid, which the officers testified smelled like gasoline and which they described as a Molotov cocktail. The officers also found a large number of rocks on the floor board on both sides of the rear seat.

Defendant testified that he had spent the early evening of March 5, 1968, with his girl friend, and about 11 p.m went to Twenty-fourth and Lake Streets to have a beer. Shortly thereafter he picked up a friend who lived near him and another young man, both of whom rode in the front seat. He also picked up three other young men who asked for rides and who got into the back seat. The defendant, who was 26, was the oldest of the occupants of the car. The two boys in the front seat were 19 and 16, while those in the back were from 18 to 22. Defendant testified that they rode around awhile and the only time they stopped was when the police stopped them. This was shortly after 12 o'clock. Defendant denied any knowledge of the sack of bottles found next to the car or the rocks found in the car. He also testified that he did not see anything thrown from the car. He was positive that none of the items were in the car before he picked up the other occupants. None of these occupants were called to testify. Defendant testified he did not try to get them because they were not being prosecuted.

When the car was searched at the police station a

loaded pistol was found in the locked glove compartment. Defendant testified it belonged to his father; had been in the car for over a year; and that he carried it because he had been abused a couple of times when he made deliveries on his part-time job.

The assignments of error we deem pertinent herein are as follows: (1) The State failed to prove beyond a reasonable doubt physical or constructive possession of a fire bomb; (2) a weapon locked in a glove compartment is not within the ambit of section 28-1011.19, R. S. Supp., 1967; and (3) the court erred in restricting defendant's explanation as to why he had a loaded weapon locked in the glove compartment of his car.

In a criminal case this court will not interfere with a verdict of guilty based upon the evidence unless it is so lacking in probative force that we can say as a matter of law that it is insufficient to support a finding of guilt beyond a reasonable doubt. Phillips v. State, 154 Neb. 790, 49 N. W. 2d 698.

Section 28-1011.17, R. S. Supp., 1967, so far as material herein, provides as follows: "It shall be unlawful for any person to * * * possess * * * or manufacture any bomb, bombshell, grenade, bottle, or other such container containing an explosive substance, such as but not limited to black powder bombs and Molotov cocktails; * * *."

Section 28-1011.19, R. S. Supp., 1967, provides: "The presence in an automobile other than a public vehicle of any weapon, instrument or substance referred to in sections 28-1011.14 to 28-1011.19 shall be prima facie evidence that it is in the possession of, and is being carried by, all persons occupying such automobile at the time such weapon, instrument or substance is found, except: (1) If such weapon, instrument or instrumentality is found upon the person of one of the occupants therein, or (2) if such weapon, instrument or substance is found in an automobile operated for hire by a duly licensed driver in the due, lawful and proper pursuit of

his trade, then such presumption shall not apply to the driver."

The prima facie evidence of possession under the circumstances herein, as well as the rocks in the car, were certainly sufficient to pose a jury question. However, we also have direct evidence that the Molotov cocktail was thrown from the defendant driver's window immediately before the defendant was apprehended. This case, while analogous, is much stronger than Smith v. United States (8th Cir., 1964), 331 F. 2d 265, in which a highway patrolman, while 300 feet behind a car he was pursuing, saw an object moving across the highway which later turned out to be a sea bag containing burglary tools. The patrolman dodged the object and continued the chase, observing numerous objects fluttering in the air. He concededly did not see the object thrown from the car. The court there said: "The jury's conclusions that the appellant and his cohorts in the fleeing car threw the damaging evidence consisting of the sea bag with its tools, concededly used in the burglary, into the path of the pursuing officer and that they threw the checks, currency and deposit slips from the Altoona Bank out of the car as they fled in front of the officer, are parallel inferences deduced from uncontroverted evidence. * * * The evidence against the appellant is, of course, circumstantial, but it is also very convincing and we hold it to be sufficient to justify the jury's conclusion that the appellant was one of those who participated in the burglary of the Altoona Bank."

Is a loaded pistol locked in a glove compartment concealed on or about the person of the driver? We determine that it is. The words "concealed on or about the person" mean concealed in such close proximity to the driver as to be convenient of access and within immediate physical reach. As we said in Kennedy v. State, 171 Neb. 160, 105 N. W. 2d 710, a weapon is concealed when it is hidden from ordinary observation and is readily accessible on his person or in a motor vehicle

operated by the defendant. In that case the arresting officer opened the back door of defendant's car and found two loaded revolvers on the back seat.

In Phillips v. State, 154 Neb. 790, 49 N. W. 2d 698, two loaded revolvers found under the right front seat were determined to be on or about the defendant's person. We there said: "* * * section 28-1001, R. R. S. 1943, containing exceptions having no application here, makes it a felony to carry a revolver concealed on or about his person. In Bright v. State, 125 Neb. 817, 252 N. W. 386, a conviction was affirmed where the evidence disclosed that defendant was carrying a revolver concealed but readily accessible either in a motor vehicle operated by him or on his person while operating the same. The weight of authority sustains such position."

While the question is no longer an open one in this jurisdiction there is no real consistency in the cases from other jurisdictions as to what constitutes "on or about the person." The reasoning in the case of City of Cleveland v. Betts, 107 Ohio App. 511, 148 N. E. 2d 708, is particularly pertinent herein because it also involved a loaded pistol in a locked glove compartment. The Ohio court there said: "The defendant's contention, that a concealed weapon in a glove compartment of an automobile, then in his charge and being driven by him, is not concealed on or about his person cannot be supported. The fact that the glove compartment was locked when the officers searched the automobile is of no moment. The defendant was in complete control of the situation with the key at his immediate command. Whether the compartment was locked or unlocked was a matter of the defendant's choice. The presence of defendant's revolver within easy reach was clearly 'on or about' his person."

Section 28-1001, R. R. S. 1943, provides as follows: "Whoever shall carry a weapon or weapons concealed on or about his person such as a revolver, pistol, bowie knife, dirk or knife with a dirk blade attachment, brass

or iron knuckles, or any other dangerous weapon, shall upon conviction be fined in any sum not exceeding one thousand dollars or imprisoned in the Nebraska Correctional and Penal Complex not exceeding two years; Provided, however, if it shall be proved from the testimony on the trial, or at a preliminary hearing of such case that the accused was, at the time carrying any weapon or weapons as aforesaid, engaged in any lawful business, calling or employment, and the circumstances in which such person was placed at the time aforesaid were such as to justify a prudent person in carrying the weapon or weapons aforesaid, for the defense of his person, property or family, the accused shall be acquitted or discharged."

The last question presented is whether defendant was within the exception stated above. Defendant testified that he had worked for the Union Pacific Railroad Company since 1965 as a chair car attendant, but did not work steadily because he was still on the extra board. He supplemented his income by working for a Mr. Paul who operated a 24-hour delivery service. He worked erratic hours on call. However, he testified he was not working at the time in question, and that he did not cart people around when he was on duty. After this testimony on direct, defendant attempted to explain the presence of a gun in the car. Some of this evidence was excluded. The pertinent record is as follows: "Q. Now, on this gun, you did have a gun in the glove compartment? A. Yes. Q. It was loaded? A. Yes. Q. No question about that, is there? A. No, sir. Q. When did you put the gun there? A. Oh, about a year ago. Q. About a year ago? A. Yes. Q. And why did you have a gun in the car? A. For the purpose of working at the delivery service and I needed protection. Q. Why do you say you needed protection? A. Because I had been abused a couple times by different guys on the streets. Q. You had been abused? What do you mean? A. Threatened a couple times. MR. LEAHY: Wait. Your Honor, at this

point I will object for the reason that I feel that this is, without further foundation, self-serving. MR. WATTS: Your Honor, certainly the defendant is allowed to tell why he was in possession of a gun. As his defense he can say why he had the gun. MR. LEAHY: My objection is that there is certainly a lack of proper foundation at this point for that question. THE COURT: Sustained. BY MR. WATTS: Q. How long did you say you were working for Paul's? A. Right at two years, about a year and a half. Q. During the course of your deliveries and while you were working for Mr. Paul, on any occasions during the 18 months up to March 5, 1968, did you have any difficulties while delivering for him by people attacking you? MR. LEAHY: At this point I will again object until it is established that this defendant was at the time that he was found with this weapon performing some duty on a particular mission for his employer. Then I will object that this is incompetent, irrelevant, and immaterial. THE COURT: Sustained. BY MR. WATTS: Q. You weren't working when you were arrested, were you? A. Right, sir. Q. The area north of Cuming between 16th and 42nd, how would you characterize the area? BY MR. LEAHY: To which the State will object for the same reason: it's incompetent, irrelevant, and immaterial. THE COURT: Sustained."

The defendant then made an offer of proof to the effect that if the witness had been permitted to testify he would testify that he had been attacked while making a delivery; that the area was highly volatile; and that he was carrying the gun for his own protection. By the defendant's own testimony he was not in the course of any employment at the time in question. The objection was properly sustained.

To be within the exception provided by section 28-1001, R. R. S. 1943, one must be engaged in a lawful business, calling, or employment, and the circumstances must be such as to justify a prudent person in carrying

the weapon for defense of his person, property, or family.

For the reasons stated, we conclude that defendant's assignments of error are without merit. The judgment is affirmed.

AFFIRMED.