HENRY R. WALBRIDGE, PLAINTIFF IN ERROR, V. THE
STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Criminal Law.** CIRCUMSTANTIAL EVIDENCE. To warrant a conviction upon circumstantial evidence, the circumstances when taken together must be of so conclusive a nature as to show beyond a reasonable doubt that the accused and no other person committed the offence.

2. **Setting aside verdict.** When there is a failure to prove a material fact, the verdict will be set aside.

ERROR to the district court for Washington county. Tried below before SAVAGE, J.

*J. Wesley Tucker,* for plaintiff in error.

*C. J. Dilworth,* Attorney General, for the state.

MAXWELL, J.

The plaintiff in error was convicted of robbery in the district court of Burt county and sentenced to imprisonment in the penitentiary for three years. He now prosecutes a writ of error to this court. The only error relied upon is that there is not sufficient evidence to sustain the verdict.

It appears from the testimony that on the 3d day of November, 1879, one John Teeters, a resident of Monroe county, Iowa, came to Tekamah to pay taxes upon certain property owned by him in Burt county. At that time he had about $100.00 in paper money. On the same day he went from Tekamah to Herman, and from there to Blair, returning to Tekamah on the 6th of that month. On his return to Tekamah he went to a saloon and became intoxicated. While at the saloon he met Walbridge and seems to have invited him to drink with him. Teeters was proposing to start a meat market in Tekamah, and Walbridge informed him that he had the necessary implements and

a building which he would sell, and invited Teeters to go home with him and stay all night, and in the morning he would fix up the business. Teeters thereupon went home with Walbridge, being at the time according to his own statement very drunk. About half-past nine o'clock Teeters retired for the night, sleeping with his pants on, the money as he testified being in a pocketbook in the left hand pocket. Walbridge's family were absent on a visit at the time. So far as appears, Walbridge owned the property he was proposing to sell to Teeters, and there is nothing in the testimony tending to impugn his motives in inviting Teeters to his house. There appear to have been three rooms in Walbridge's house, two of which were occupied as sleeping rooms. Teeters occupied one of the sleeping rooms and Walbridge the other. About midnight three acquaintances of Walbridge, named Monroe, Sawtelle, and Menier came to the house and demanded admittance and forced open the door, and insisted that Walbridge should get up, make a fire in the stove, and cook some chickens that they had brought with them for their supper. These men were very much under the influence of liquor. The testimony tends to show that Walbridge made a fire, dressed the chickens, and endeavored to cook the same. There is no testimony tending to show that Monroe, Sawtelle, and Menier, or any of them, had any knowledge that Teeters was stopping with Walbridge before they entered the house; but soon after gaining admission to the house they entered the room in which Teeters was sleeping and woke him up. He complained at once that his pocketbook was missing, but it was found on the bed and he proceeded at once to count the money. After some altercation with Monroe in regard to the money, he went to the door of his room, and after some conversation with the others, requested Walbridge to assist him in counting his money. Walbridge and he then commenced to count the money on the bed, and while thus engaged, Monroe came in, broke the lamp

chimney, extinguished the light, and seized and carried away the pocketbook and money. Walbridge testifies that he went at once into another room and procured a light and returned to the room in which he had left Teeters. In the mean time Teeters had escaped from the house closely surrounded by the three men named, and he seems to have had a struggle with Monroe in the yard near the door. Teeters then cried "murder" twice, and was permitted to go away. There is no testimony tending to show that Walbridge took any part in, or aided or abetted in the robbery, and aside from the fact that it was committed in his house by persons with whom he seems to have been on intimate terms, and the further fact that a few days afterwards he paid a merchant $25 in $5 bills, there is absolutely no testimony tending to connect him with it in any manner. There is no testimony tending to identify any of the bills as having belonged to Teeters; and Walbridge proved by his own testimony that he had received from various persons whom he named, various sums, the aggregate of which greatly exceeds the sum paid to the merchant, and there is no attempt on the part of the state to dispute this testimony. Two witnesses were called, who stated that they had refused him credit for small sums on the day preceding the robbing; but there is no attempt to deny the facts as to the possession of the money. This question may therefore be considered as eliminated from the case. Is the remaining testimony sufficient to sustain a verdict of guilty? Monroe has already been convicted and sentenced to the penitentiary as the principal in the transaction, and Walbridge, if guilty, is so merely as accessory.

. The law presumes everyone to be innocent. And this presumption is to be considered by the jury as evidence to the benefit of which the party accused of crime is entitled. And when a criminal charge is to be proved by circumstantial evidence the proof ought not only to be consistent

with the guilt of the accused but inconsistent with any other rational conclusion. 1 Greenleaf Ev., SEC. 34.

In sec. 29, vol. 3, the same author thus states the rule as to the degree of proof: "It is therefore a rule of criminal law that the guilt of the accused must be fully proved. Neither a mere preponderance of evidence nor any weight of preponderant evidence is sufficient for the purpose unless it generate full belief of the fact to the exclusion of all reasonable doubt." To warrant a conviction of crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt. And the circumstances, when taken together, must be of so conclusive a nature as to show beyond a reasonable doubt that the accused and no other person committed the offense. *Sumner v. The State*, 5 Blackf., 579. *Com. v. Webster* 5, Cushing, 296. A jury can convict only on facts proved, and not on mere suspicion of guilt, however strong it may be. The law fixes the standard by which guilt is to be determined—that the proof shall exclude reasonable doubt of the prisoner's guilt. The credibility of the witnesses must necessarily be left to the jury, and they must determine from the testimony, under the instructions of the court, whether or not the accused is guilty. But if there is a failure to prove a material fact the jury cannot substitute their own judgment, or belief, or suspicion, for such fact and find a verdict of guilty. If they do so the court has a plain duty to perform—to set the verdict aside. In nothing is the state more interested than in the protection of the innocent, and as courts deal only with tangible evidence every person is innocent whom the proof fails to show is guilty. Where there is a failure of proof upon a material point the humblest citizen may confidently appeal to the courts to set aside a verdict that should not have been rendered. If this was not so, constitutional rights and guarantees would amount to but little, while erroneous

verdicts, rendered under misapprehension, mistake, or 'from suspicion, would go unreversed. But such is not the law. As there is a failure of proof upon material points the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

LAKE, CH. J.

I am of the opinion that the evidence submitted to the jury was sufficient to sustain the verdict of guilty, and therefore dissent from the conclusion reached by the majority of the court.