Lowe v. State.

---

### SHERMAN A. LOWE v. STATE OF NEBRASKA.

FILED MAY 15, 1923. No. 23200.

1. **Criminal Law**: CIRCUMSTANTIAL EVIDENCE. "To justify conviction on circumstantial evidence, it is necessary that the facts and circumstances essential to the conclusion sought must be proved by competent evidence beyond a reasonable doubt, and, when taken together or as a whole, must be of such a character as to be consistent with each other, and with the hypothesis sought to be established thereby, and inconsistent with any reasonable hypothesis of innocence." *Smith v. State,* 61 Neb. 296.

2. **Evidence** examined, and *held* insufficient to sustain the verdict.

ERROR to the district court for Furnas county: CHARLES E. ELDRED, JUDGE. *Reversed.*

*Butler & James* and *Edward J. Lambe,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *George W. Ayres, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and GOOD, JJ., BEGLEY, District Judge.

ALDRICH, J.

The plaintiff in error (hereinafter termed defendant) was prosecuted in the district court for Furnas county, upon an information charging him with murder in the first degree of one D. N. Campbell. The jury found him guilty of manslaughter. Motion for new trial was overruled and a sentence of three years' imprisonment in the penitentiary was imposed by the court. Defendant

now presents the record of his conviction to this court for review.

The principal assignments of error are as follows: Insufficiency of evidence; verdict is contrary to evidence; evidence does not connect defendant with the crime with which he is charged. This in short presents the propositions upon which defendant relies for reversal.

The record discloses that on September 6, 1922, the deceased, D. N. Campbell, was employed by the J. J. Grier Company as cook of a boarding train camp' conducted for the railroad trackmen engaged in work at Edison, Nebraska. Defendant was employed as a waiter. The train camp, consisting of a number of box cars, was located on a side-track. Defendant's dining car was located next to the kitchen car where the deceased was found dying at 1:30 p. m. The kitchen and dining cars had swinging doors at each end, and were connected by board planks laid between the cars.

There is no direct evidence that defendant stabbed the deceased, but, so far as the record shows, he was the last man to see Campbell before he was found stabbed. The witness Miller, a waiter, testified that he had been in the kitchen car a few minutes after 1 o'clock; that defendant was there at the time wanting to help Campbell with his work; that about five minutes after the witness left the car defendant called to him and said, "The cook is dead." When Miller came to the door Campbell was still alive, but before the commissary clerk arrived from town he was dead.

These three witnesses, Miller, the commissary clerk, and the defendant, testified as to what took place in the kitchen car about the time the deceased was said to have been killed. In all essential particulars their testimony presents no discrepancy.

An ordinary paring knife was found on a table in the kitchen car by Edwards, the commissary clerk, and was received in evidence. There was no blood on the knife

and nothing to show it had been used by defendant for any other purpose than peeling potatoes.

Another circumstance in defendant's favor is the absence of evidence of provocation or intent to commit the crime. It is true their language was coarse, rough and uncouth. But, as a matter of law: "Mere words, however abusive and insulting, will not justify an assault, nor constitute a sufficient provocation to reduce to manslaughter what would otherwise be murder." *State of Kansas v. Buffington*, 71 Kan. 804, 4 L. R. A. n. s. 154. See, also, *Braunie v. State*, 105 Neb. 355.

From the bill of exceptions we quote the following testimony of Dr. Fast: "I found this man was suffering with a disease known as paresis, or pares; the common term is softening of the brain; another familiar term that people might understand better is general paralysis of the brain. * * * Q. Now, what would you say, doctor, about the patient having the disease in the stage you found Mr. Lowe to be in, with reference to being able to control the muscles of the body, especially in times of excitement? A. There would be times when he would not be able to control his muscular act. Q. And at other times, what would you say as to his being mentally competent? A. At other times he would be normal. Q. Do you know anything, doctor, about the term of 'gooseing'? A. Yes. Q. And what would you say as to the effect this 'gooseing' would have on the patient in the condition you found Mr. Lowe to be in as to his being able to control the muscles, and his actions? A. A man that is subjected to anything that will produce an irritability of the nervous system, continuously, even pointing the finger at him, or any one with a shrill sharp noise, that might be irritable to his system."

Our court has said: "Where it is sought to establish homicide by circumstantial evidence, the circumstances, when taken together, should be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion, and producing in effect a reasonable and moral

certainty that the accused, and no one else, committed the offense charged." *Casey v. State,* 20 Neb. 138.

It may be true that the state failed to prove facts that show at least a probability, yet it also failed to prove beyond a reasonable doubt the fact that the defendant, and defendant alone, could have been the only one who could have committed this crime. It is a matter of law in this state that: "It is essential that the circumstances. taken as a whole, and giving them their reasonable and just weight, and no more, should to a moral certainty exclude every other hypothesis. *Commonwealth v. Webster,* 5 Cuch. (Mass.) 295, 319." *Casey v. State, supra.*

Where the state for conviction relies on circumstantial evidence, circumstances and material facts should point to the guilt of the defendant.

The defendant testified: "Dan (deceased) was on the bed and I went to the ice box and I raised up the lid to get those potatoes; they were in a steamer, and I pulled the potatoes out and set them on the bread box directly to the left, and, as I raised it, something on the range attracted his attention, and I was there ready to let the door down when he immediately got up and 'goosed' me, and, as he did so, in order to get away from him, I dropped the ice box lid and turned around and came in contact with him, and as he always followed me up in his playful way, to try to get me again, and I had three broken ribs at that time, I ran directly clean on out into the other car; clear in the east of the car, the kitchen, and I did not stay; I went on into my dinner, and I was kind of nervous, and I stopped and went to the door and stood there, and I think it was Tony Tracy came along and talked to him a minute, and took a drink of water, and while standing there in the door talking I heard a fall back in the kitchen car, I immediately stepped over to where I could see into the kitchen, and I saw that Dan was on the floor, and I made a run for him, and got there just as quick as I could, and when I

came there I saw he had been wounded, and I immediately got some water, but he could not drink. I went out and called Adam Miller to come and go and get Mr. Edwards at once, which he did; and I remained right there, and I tried to revive him, and pulled off my apron and put over him, and I did all I could, and to no avail, He lived possibly ten minutes."

The conclusion is that the verdict is not sustained by the evidence. It follows that the judgment must be, and it hereby is, reversed, and the cause is remanded.

REVERSED.