ARTHUR RIMPLEY, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

98 N. W. 2d 868

Filed October 30, 1959. No. 34630.

*Johnston & Grossman,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *John E. Wenstrand,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an error proceeding from the district court for Jefferson County by Arthur Rimpley, defendant below. Rimpley thereby seeks to have his conviction of motor vehicle homicide, together with his sentence based thereon to the State Reformatory for men, set aside. We shall herein refer to Rimpley as the defendant.

The statute, under and pursuant to which defendant was prosecuted, provides, insofar as here material, that: "Whoever shall cause the death of another without malice while engaged in the unlawful operation of a motor vehicle shall be deemed guilty of a crime to be known as motor vehicle homicide * * *." § 28-403.01, R. R. S. 1943.

In an action charging motor vehicle homicide the burden is on the State to prove beyond a reasonable doubt that the person charged operated the motor vehicle, that he operated it in violation of one or more of the statutory provisions relating to the operation of motor vehicles, and that such unlawful operation was the proximate cause of the death. Pribyl v. State, 165 Neb. 691, 87 N. W. 2d 201.

The information filed against defendant, insofar as here material, charged: "* * * that Arthur Rimpley on the ninth day of October in the year of our Lord Nineteen hundred fifty-eight in the County of Jefferson and State aforesaid, then and there being did then and there at about 5 o'clock P.M., without malice, while under the influence of intoxicating liquor, did operate and drive

an automobile, at an excessive rate of speed, through the stop sign on Nebraska highway 3S at the junction of said highway with Nebraska highway 15, at the southeast limits of Fairbury, Jefferson County, Nebraska, without stopping thereat; and unlawfully and feloniously did operate and drive his automobile, at said time and place, into and against an automobile operated and driven by Cashious M. Flower with such force and violence that said Cashious M. Flower died on said date as a result thereof." We shall hereinafter refer to Cashious M. Flower as the decedent.

Defendant contends the trial court erred in refusing to sustain his motion for dismissal made at the end of the State's case. This raises a question of whether or not the evidence adduced by the State is legally sufficient to sustain the charge of motor vehicle homicide.

As stated in Fielder v. State, 150 Neb. 80, 33 N. W. 2d 451: "Where the evidence is so lacking in its probative force that as a matter of law it is insufficient to support a finding of guilt beyond a reasonable doubt, the defendant is entitled to be discharged and the case dismissed." However, as stated in Haffke v. State, 149 Neb. 83, 30 N. W. 2d 462: "This court will not interfere with a verdict of guilty in a criminal case which is based upon conflicting evidence unless it is so lacking in probative force that we can say as a matter of law that it is insufficient to support a finding of guilt beyond a reasonable doubt."

Defendant contends that in several particulars the evidence adduced by the State is not sufficient. We shall hereinafter discuss each of the contentions that he makes in this respect. In considering some of the questions raised by the defendant the following principles have application:

"The test by which a jury shall determine the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect the accused with the crime charged are of such

conclusive nature as to exclude to a moral certainty every rational hypothesis except that of guilt." Hoffman v. State, 162 Neb. 806, 77 N. W. 2d 592.

"To justify a conviction on circumstantial evidence, it is necessary that the facts and circumstances essential to the conclusion sought must be proved by competent evidence beyond a reasonable doubt, and, when taken together must be of such a character as to be consistent with each other and with the hypothesis sought to be established thereby and inconsistent with any reasonable hypothesis of innocence." Jeppesen v. State, 154 Neb. 765, 49 N. W. 2d 611.

"When circumstantial evidence is relied upon, the facts and circumstances must form a complete chain and point directly to the guilt of the accused in such a conclusive way as to exclude any other reasonable conclusion, every element essential to the conclusion must be proved by competent evidence beyond a reasonable doubt, and the existence of a reasonable doubt as to any one of them requires an acquittal." Reyes v. State, 151 Neb. 636, 38 N. W. 2d 539. See, also, Jeppesen v. State, *supra.*

"It is the province of the jury to determine the circumstances surrounding, and which shed light upon, the alleged crime; and if, assuming as proved the facts which the evidence tends to establish, they can be accounted for upon no rational theory which does not include the guilt of the accused, the proof cannot, as a matter of law, be said to have failed." Morgan v. State, 51 Neb. 672, 71 N. W. 788. See, also, Kitts v. State, 153 Neb. 784, 46 N. W. 2d 158; Hoffman v. State, *supra.*

The accident, out of which the charges filed against defendant arose, happened about 5 p.m. on Thursday, October 9, 1958, on state highway No. 15 at a point near the southeast limits of the city of Fairbury, which is in Jefferson County, Nebraska. At that point state highway No. 3S intersects state highway No. 15 from the east. The accident happened in the west lane of

highway No. 15 or the right-hand lane for southbound traffic. It occurred when a car owned by defendant was driven head-on into the front end of a car being driven south on highway No. 15 by decedent. Defendant's car had approached and entered onto highway No. 15 from the east-southeast on highway No. 3S. There was a stop sign on highway No. 3S as it intersects highway No. 15. Decedent was driving his son's car, which was a 1953 Dodge sedan.

There were four eyewitnesses to the accident who testified at the trial. They were Billy G. Adamson, Royce Horsky, Harvey Witt, and Sam Seachord. Adamson, at the time, was driving his car on highway No. 3S toward highway No. 15. The defendant's car passed his car about a mile from the point of the accident. However, Adamson drove along behind defendant's car and both he and Royce Horsky, a guest in his car, were in a position to and did see the accident when it happened. Harvey Witt was driving his car south on highway No. 15 at the time and was only about 50 feet behind the car decedent was driving when the accident occurred. Sam Seachord, a truck driver, was driving north on highway No. 15 when he saw the accident happen in the west lane of highway No. 15.

Defendant contends there was no competent evidence introduced by the State from which a jury could properly find that he was driving his car at the time of the accident.

Royce Horsky testified he was sure there was one person in defendant's car when it passed the car in which he was riding on highway No. 3S and that he was driving. He further testified that at the scene of the accident he saw defendant lying on the ground just outside of the driver's door of defendant's car, which was in the ditch on the west side of highway No. 15. Billy G. Adamson testified he saw a man (defendant) in the ditch near defendant's car. Sam Seachord testified he never saw anyone get out of either car, saw only

two people there who had been involved in the accident, and that defendant was lying in the ditch. Harvey Witt testified he saw a man fly out of defendant's car, that he saw the man who flew out of the car lying in the ditch, and that the man lying in the ditch was the defendant. Witt went on to testify that the defendant was lying in the ditch beside his car, which ended up in the ditch west of highway No. 15, and that he saw only the two men at the accident, the other being decedent who was still in the car he had been driving. We think this evidence sufficient, under the rules hereinbefore set forth, to present a question for a jury as to whether or not defendant was driving his car at the time the accident occurred.

But defendant contends that while there is no question as to his ownership of the car in which he was riding, that there is a big question as to whether or not there was a third person involved in the accident who might have been driving the car.

It is true that one of the police officers testified he made a search to see if anybody else might have been involved in the accident because, as he stated, the authorities are never sure as to just how many people may have been involved in any accident. However, he goes on to state that he didn't think there was anyone else involved and didn't find anyone else. That only two people were involved in the accident, one in each car, is fully supported by the eyewitnesses to the accident. We make the further observation that the jury was not bound to believe the story of defendant in this regard.

As hereinbefore quoted from the information, the State charged defendant with driving his automobile at an excessive rate of speed through the stop sign on highway No. 3S at the junction thereof with highway No. 15. If he did so then it was done unlawfully for section 39-754, R. R. S. 1943, provides, insofar as here material, that: "The Department of Roads and Irriga-

tion with reference to state highways and local authorities with reference to highways under their jurisdiction are hereby authorized to designate main traveled or through highways by erecting at the entrances thereto from intersecting highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto."

Defendant contends the State failed to introduce any competent evidence to support this charge. Billy G. Adamson testified the defendant's car weaved as it went into the one-way lane for cars on highway No. 3S to enter highway No. 15 and that it didn't stop at the stop sign located on highway No. 3S. Harvey Witt testified he saw defendant's car approach highway No. 15 from the east on highway No. 3S at a fast rate of speed and out of control and that it didn't stop. Sam Seachord testified he saw defendant's car coming from the east at a fast rate, which he estimated at 40 miles an hour, and that it didn't stop at the stop sign. Donald E. Mayhew, a trooper of the Nebraska Safety Patrol, testified the tire marks left by defendant's car as it approached highway No. 15 on highway No. 3S, and as it entered thereon, showed its speed had been accelerated rather than decreased. From the evidence adduced by the State we think the jury could properly find the defendant operated his car in an unlawful manner as charged in the information.

The information, as hereinbefore set forth, also charged the defendant with operating his automobile while under the influence of intoxicating liquor. Section 39-727, R. S. Supp., 1957, provides, insofar as here material, that: "It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle while under the influence of alcoholic liquor or of any drug. Any person who shall operate or be in the actual physical control of any motor vehicle while under

the influence of alcoholic liquor or of any drug shall be deemed guilty of a crime * * *." If the defendant was guilty of operating his car as charged in the information he was guilty of doing so in an unlawful manner.

Defendant contends the State failed to adduce any competent evidence to support this charge. Dr. R. L. Cassel, who observed and examined the defendant at the Fairbury Clinic in Fairbury shortly after the accident, testified he believed that the defendant was under the influence of intoxicating liquor at that time. Donald E. Mayhew, trooper of the Nebraska Safety Patrol, testified he observed the defendant shortly after the accident and that he then had a strong odor of alcohol on his breath and, from observing the defendant, it was his opinion that he was under the influence of alcoholic liquor. Dr. R. L. Cassel, the county physician of Jefferson County, did, at the request of a police officer, take a sample of defendant's blood shortly after the accident happened. This sample was analyzed by Marjorie Dewey, a qualified chemist for Harris Laboratories of Lincoln, Nebraska, as to alcoholic content by the "Muehlberger Method," which she was authorized to make. She testified that by using this method, a recognized test, it showed the alcoholic content of the sample of blood taken from defendant shortly after the accident to be .018 percent by weight. The legal effect of this test is covered by section 39-727.01, R. S. Supp., 1957, and the jury was instructed in regard thereto by instruction No. 11. We think the evidence adduced by the State presented a jury question.

Defendant contends, however, that the admission of the chemist's report as to the alcoholic content of defendant's blood was in error because a substance in the vial, wherein defendant's blood was placed by Dr. Cassel, was not explained. There is evidence that the sealed vial in which the defendant's blood was placed after the seal had been broken by trooper Donald E. Mayhew was obtained by the Nebraska Safety Patrol

from the Harris Laboratories and that the substance therein, consisting of a powder, had been placed therein by the Harris Laboratories prior to the vial being sealed. Marjorie Dewey, a qualified chemist employed by Harris Laboratories, testified she knew what had been placed in the vial; that it is a chemical called sodium chloride; that it is placed therein to prevent coagulation and as a preservative for the blood; that it is necessary to use it in order to obtain a proper analysis of the blood taken; that it prevents bacterial action of the blood that might alter the alcoholic content thereof; and that it does not destroy the original blood nor affect the alcoholic test thereof. We think this, together with the testimony as to the taking of the blood sample and the handling thereof up to the time of its being tested, laid a full and complete foundation for the admission of the test made thereof and the trial court was not in error in admitting it.

Defendant also questions the sufficiency of the evidence adduced by the State to show that decedent's death resulted from the accident. He asks, is there any competent evidence that decedent's death was the proximate result of defendant's unlawful acts in the operation of his motor vehicle?

Herschel Flower, decedent's son, testified that at the time of the accident his father was 78 years of age but had average health, both physically and mentally; that decedent was driving his, the son's, car at the time, which was a 1953 Dodge sedan; and that the car was in excellent condition. Harvey Witt, who was following the Flower car at the time of the accident, testified it was going about 25 miles an hour. He also testified that immediately after the accident decedent was lying on the front seat of his car, still alive, and that he helped remove him from the front seat to a stretcher. Royce Horsky testified the person in the Dodge car was lying across the seat. Billy G. Adamson testified that immediately after the accident the elderly man in the

Dodge car was lying across the seat seriously injured and that the steering wheel of the Dodge car was bent. Sam Seachord testified the man in the Dodge was lying on the front seat. The pictures of the cars taken shortly after the accident and before they were moved show the accident was approximately a head-on collision. Frank Knocke, the deputy sheriff, testified the motor of the Flower car was pushed back into the body thereof and that the lower part of the steering wheel was bent up. Donald Cerveny, a policeman from Fairbury, testified Flower was bleeding from both the nose and mouth and that he was in bad shape. Roy Traum testified decedent was placed on an ambulance cot and was taken by ambulance to the Fairbury hospital. Dr. Roscoe Luce saw decedent at the Fairbury hospital about 5:30 p.m. and examined him at that time. He testified that because of the nature of his condition it was impossible to examine decedent by means of X-ray and that by the time they had taken off his clothes and started to stimulate him, which took about 10 minutes, he died. Dr. Luce gave as the cause of his death a fractured skull, crushed chest, and probable internal injuries, although he did not make any post mortem examination. We think this evidence was sufficient to present a jury question under the principles applicable thereto, as hereinbefore set forth.

Defendant also complains of the State offering and re-offering exhibit 9, a bottle of beer, claiming prejudice resulted from the State so doing. Donald Cerveny, captain of police of the city of Fairbury, testified he found the bottle of beer, which was cold, lying in the ditch beside defendant's feet; that he placed it on the seat in the defendant's car; and that he did so to preserve it to use as evidence. Defendant's objections were sustained and the bottle of beer was never received in evidence. In this situation we can not see where error occurred on the part of the trial court. If defendant wished to have the trial court caution the jury

in this regard he should have made a request to that effect. In the absence of such request defendant is not now in position to complain because the trial court failed to do so.

Defendant took the stand and on cross-examination was asked about a former arrest and conviction in Perkins County, Nebraska, on a charge of drunk driving. No objection was made thereto by defendant or his counsel and defendant admitted that he had been so convicted. Defendant now complains this was improper and prejudicial. Under the situation here disclosed we think the following is controlling: "Error may not be claimed because of the nature of cross-examination if it was not on the trial challenged by timely and proper objection thereto." Latham v. State, 152 Neb. 113, 40 N. W. 2d 522.

We have examined the record and think it presents a question for a jury on all issues raised by defendant as to the sufficiency of the evidence adduced by the State and that defendant had a fair and impartial trial. In view thereof we affirm the action of the trial court.

AFFIRMED.