STATE OF NEBRASKA, APPELLEE, V. JERRY OHLER, APPELLANT.

134 N. W. 2d 265

Filed April 9, 1965. No. 35874.

John McArthur, for appellant.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and POLLOCK and SIDNER, District Judges.

CARTER, J.

The defendant was charged in the district court for Greeley County with stealing, taking, and carrying away money in excess of $200 belonging to the Glessinger Motor Company in Spalding, Nebraska. The jury returned a verdict of guilty. A sentence of confinement for 18 months was imposed. The defendant has appealed.

The evidence of the State shows that on October 22, 1962, the sum of from $225 to $250 was stolen from the safe in the office of the Glessinger Motor Company in Spalding, Nebraska. The business of the company was operated by Robert Glessinger. The place of business consisted of an office, showroom, and a repair shop, and was located on the main street of Spalding. On the day of the larceny Glessinger was working in the office and Ted Molczyk, a mechanic, was working in the repair shop. During the day the safe door was kept closed but unlocked. Money used in the business was kept in a tin box in the unlocked safe during business hours in lieu of a cash register.

Glessinger testified that between 4 and 4:30 p.m. on Monday, October 22, 1962, he had occasion to put some money in the cash box. At that time there was $650 in checks and between $225 and $250 in the box, belonging to the Glessinger Motor Company. Glessinger was in and about the office continuously until approximately 5 minutes after 5 p.m., when a friend drove up in front of his place of business and honked his car horn. He went out, got in the car, and he and his friend drove about 8 blocks. On their return they again parked the car in front of Glessinger's place of business. At the time he left the office Glessinger had been listening to a speech by President Kennedy on the Cuban crisis. When he returned in his friend's car they were still listening to President Kennedy on the car radio. The speech was 18 minutes in length.

While he was sitting in the car he saw the defendant come out of the company office and walk up the street.

He did not see the defendant again until he identified him on November 20, 1962, in the jail in Clay Center, Nebraska. He saw no one else enter or come out of the office before he returned to the office and found the checks and money gone. The checks were later found under a bridge outside of town and returned to him. The money was not recovered.

The mechanic testified that he did not observe the defendant or anyone else in the place during the time in question. He did not know that Glessinger was out of the office.

Glessinger notified the county sheriff of the theft. Patrolman Donald G. Grieb, safety patrol investigator, assisted local officers in the investigation. On November 20, 1962, Glessinger accompanied patrolman Grieb to Clay Center where Glessinger identified the defendant as the person he saw leaving his office on the day of the theft.

Patrolman Grieb had a conversation with the defendant in the jail in Clay Center. Defendant at first informed him that he had never been in Spalding, that he did not know where the town is located, and that in fact he was not in the state on October 22, 1962. Later in the conversation he admitted he was in Spalding on the day of the larceny and that he was in the office of the Glessinger Motor Company on the day and at the time as testified to by Glessinger. Defendant made no statements concerning the taking of the money and demanded an attorney before discussing the matter further. He made no statement as to why he was in Spalding on that day, or as to why he called at the office of the Glessinger Motor Company.

There is evidence that defendant entered a grocery store operated by one Coyne before he went to the Glessinger office. He was asked by two clerks if they could help him. He answered each clerk that they did not have what he wanted, and left the store. He went to the rear, locked screen-door of another grocery op-

erated by Dick German, who asked him what he wanted. He answered that he wanted to find out what kind of business was being operated there, and he left.

The evidence shows that he told no one who he was or what he wanted. When he found no one in the office of the Glessinger Motor Company, he did not go into the repair shop where the mechanic was working, as any person would ordinarily do. He was seen by no one after he left Glessinger's office and walked up the street. No other person was seen in or about the office during the 10 to 15 minutes that Glessinger was absent. Defendant left town immediately after he left the Glessinger office and was seen by no one after he passed from Glessinger's view.

The defendant testified in his own defense. He stated that he went to Spalding in the furtherance of his occupation as a signpainter. He had no paint or brushes, or other tools or materials of his trade with him. He explained this by testifying that he was seeking contracts for future work, but he solicited no one for such work. He testified that he entered the Glessinger office for this purpose, but finding no one in the office, he made no effort to find anyone connected with the business and immediately left.

After all the evidence was adduced, the jury could find the following facts and inferences therefrom: The Glessinger Motor Company was the owner of from $225 to $250 that was in its office safe between 5:05 and 5:18 p.m. on October 22, 1962. The defendant came into the office during this period, the only time the money was left unguarded. No other person was seen near the office or the company safe during this short period of time. Defendant did not look around for any person connected with the business, but left immediately and departed the town. Defendant went to two other stores earlier in the afternoon for no apparent reason, at least none that he gave. The inference is that, under the circumstances, he was "casing" the town. He testified that he

came to Spalding in the furtherance of his trade as a signpainter. But he carried no materials or equipment used in such business. He said he was seeking contracts for future work, but he solicited no one for any such work. He neither revealed his identity nor his trade to anyone. He admits that he left town immediately after leaving the office of the Glessinger Motor Company, which was immediately following the disappearance of the money. When interviewed by an investigator on November 20, 1962, he at first denied that he had ever been in Spalding, asserted that he did not know its location, and further stated that he had not been in the State of Nebraska on the day of the theft. After he was identified, he admitted being in Spalding and in the office of the Glessinger Motor Company in the late afternoon of October 22, 1962, less than 30 days prior to the date of the interview. All of the circumstances are consistent with each other and point to the guilt of the accused. There are no circumstances pointing to the innocence of the defendant and the only evidence supporting his defense is his denial that he is guilty.

A jury, after considering the foregoing circumstances and the inferences reasonably to be drawn therefrom, had ample evidence from which a finding of guilt could be found under the instructions of the court, informing it of the findings necessary to sustain such a conviction. The activities of a thief ordinarily are secretive and are not usually carried out in the presence of witnesses. When the commission of the offense is carried out in such a manner, circumstantial evidence is necessarily the only evidence available and where, as here, there are many circumstances pointing to the guilt of the defendant, the question is for the jury under proper instructions safeguarding the rights of the defendant. In such a situation the question of the guilt or innocence of the defendant is for the jury.

The weight and credibility of the evidence was for the jury. The jury found beyond a reasonable doubt that

defendant committed the offense. It is evident that the jury did not believe defendant's version of the evidence as it had a right to do. It is not questioned that a person may be convicted on circumstantial evidence alone, but such evidence must meet a certain test which was properly explained to the jury by the instructions.

The trial court instructed the jury, as it is required to do, that to justify a conviction on circumstantial evidence it is necessary that the facts and circumstances essential to the conclusion sought must be proved by competent evidence beyond a reasonable doubt, and, when taken together must be of such a character as to be consistent with each other and with the hypothesis sought to be established thereby and inconsistent with any reasonable hypothesis of innocence. Rimpley v. State, 169 Neb. 171, 98 N. W. 2d 868; Sedlacek v. State, 166 Neb. 736, 90 N. W. 2d 340; Phillips v. State, 154 Neb. 790, 49 N. W. 2d 698. The jury considered the evidence and concluded that it was sufficient to find the defendant guilty beyond a reasonable doubt and, in so doing found that the facts were consistent with each other and with his guilt, and that they were inconsistent with any reasonable hypothesis of innocence. Under the facts and circumstances shown, the foregoing questions constituted issues of fact for the jury and not this court.

In Hoffman v. State, 162 Neb. 806, 77 N. W. 2d 592, this court, in a criminal case based largely on circumstantial evidence, said: "Under this rule, in the first instance, it is a function of the jury to weigh the circumstantial evidence and to test it by the following rule found in Morgan v State, supra, and repeated in Kitts v. State, supra: 'The test by which to determine the sufficiency of circumstantial evidence in a criminal prosecution, is whether the facts and circumstances tending to connect the accused with the crime charged are of such conclusive nature as to exclude to a moral certainty every rational hypothesis except that of his guilt.' If the jury does so find, that finding may not, as a

matter of law, be disturbed on review by this court if the evidence supporting the finding sustains some rational theory of guilt."

In this case there was competent circumstantial evidence of probative value from which the jury could reasonably infer and find that the defendant committed the offense charged. Under such circumstances the verdict of the jury is sustained by the evidence and no basis exists for this court to interfere with the jury's verdict.

The defendant contends the trial court erred in not requiring the jury by its verdict to determine the value of the money taken. While this was formerly a statutory requirement, the Legislature by Laws 1963, chapter 163, page 576, repealed the provision. Since the repeal was effective prior to the trial of this case, the trial court did not err in failing to require the jury by its verdict to fix the amount of the money stolen.

The judgment of the trial court is correct and it is affirmed.

AFFIRMED.

SPENCER, J., dissenting.

I dissent from the majority opinion because I believe while it gives lip service to it, it fails to apply the well-established law of this jurisdiction.

The only question presented by this appeal is the sufficiency of the evidence, which is wholly circumstantial, to sustain a conviction. The sufficiency of this evidence must be established in the light of well-established rules of law. See Kitts v. State, 153 Neb. 784, 46 N. W. 2d 158. In that case we said: "The test by which to determine the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect accused with the crime charged are of such conclusive nature as to exclude every reasonable hypothesis except that of his guilt."

In State v. Nichols, 175 Neb. 761, 123 N. W. 2d 860, we said: "In order to warrant a conviction on circum-

stantial evidence, the circumstances taken together must be of such conclusive nature and tendency as to produce a reasonable and moral certainty that the accused committed the offense charged beyond a reasonable doubt.

"In determining the weight of circumstantial evidence, a jury must find that the facts and circumstances are of such a conclusive nature as to exclude to a moral certainty every other rational hypothesis except that of guilt of the accused."

I have no quarrel with the facts stated in the majority opinion but do believe some additional observations should be made. The front door opens into a 20 by 40 foot showroom, behind which is a repair shop. On the east of the showroom, there is a parts room with an office on its north side. There is an open doorway between the showroom and the parts room which has a counter and a swinging gate. The last time Glessinger looked in the cash box was sometime before 4:30 p.m. On that occasion, someone called out in the showroom and he returned the cash box to the safe, pushed the safe door closed but did not lock it, and went out into the showroom. He cannot remember who it was that called him out. After that he was either in the showroom or the repair shop, and does not believe that anyone could have entered the office without his seeing him, until he left with a friend shortly after 5 p.m. It was not possible to see into the showroom from the repair shop. While the record indicates he was in the repair shop part of the time before he left, it does not specify how long this might have been. When he did leave he was gone 10 or 15 minutes.

The majority opinion stresses the fact that Glessinger saw no one else enter or come out of the office but the defendant before he found the checks and money gone. However, Glessinger admits that it was not possible for him to know how many people came in and went out of his showroom while he was away. "It could be quite

a number." It was Glessinger who testified as to the finding and return of the checks. This was based entirely on what others told him. The checks were returned to him by a third person to whom they had been given by the person who allegedly found them. None of these people testified at the trial.

There is absolutely no testimony as to Ohler's movements after he was seen coming out of the showroom by Glessinger. There is no testimony that he even left town along the road on which the checks were allegedly found. It was approximately a month later that the accused was picked up at Clay Center and returned to Greeley County.

I feel that the majority opinion makes an unwarranted assumption in saying: "When he found no one in the office of the Glessinger Motor Company, he did not go into the repair shop where the mechanic was working, *as any person would ordinarily do.*" (Italics supplied.) It was at least 10 or 15 minutes after 5 p.m. Ohler testified he knocked on the counter, and when he got no response left the building. An ordinary person would possibly do just that *at that time of day.*

The majority opinion comments that no other person was seen in or about the office during the 10 or 15 minutes Glessinger was absent. The question not answered is, *who was there to see them?* Glessinger was gone and the mechanic was working on a car in the repair shop where he could not see the office or the showroom. No one was called by the State to prove this fact. It is apparent that the majority opinion is putting the burden on the defendant to prove that someone else was in the vicinity who could have committed the crime.

The majority opinion states: "There are no circumstances pointing to the innocence of the defendant and the only evidence supporting his defense is his denial that he is guilty." Have we reached the place in Nebraska where a defendant must prove his innocence? I believe our rule still is that an accused is presumed to

be innocent until he has been proved guilty beyond a reasonable doubt. The defendant has been convicted solely because he had an opportunity to commit the crime because he was on the scene during a part of the period within which the crime could have been committed. It does seem a little strange that in a jurisdiction where possession of stolen property in and of itself is not sufficient to make a prima facie case of burglary or larceny (Henggler v. State, 173 Neb. 171, 112 N. W. 2d 762), that mere presence at the scene of a crime at some time during the period when it could have been committed should be alone sufficient to do so for grand larceny.

The proper rules to be applied are the following from Rimpley v. State, 169 Neb. 171, 98 N. W. 2d 868: " 'The test by which a jury shall determine the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect the accused with the crime charged are of such conclusive nature as to exclude to a moral certainty every rational hypothesis except that of guilt.' Hoffman v. State, 162 Neb. 806, 77 N. W. 2d 592.

" 'To justify a conviction on circumstantial evidence, it is necessary that the facts and circumstances essential to the conclusion sought must be proved by competent evidence beyond a reasonable doubt, and, when taken together must be of such a character as to be consistent with each other and with the hypothesis sought to be established thereby and inconsistent with any reasonable hypothesis of innocence.' Jeppesen v. State, 154 Neb. 765, 49 N. W. 2d 611.

" 'When circumstantial evidence is relied upon, the facts and circumstances must form a complete chain and point directly to the guilt of the accused in such a conclusive way as to exclude any other reasonable conclusion, every element essential to the conclusion must be proved by competent evidence beyond a reasonable doubt, and the existence of a reasonable doubt as to any

one of them requires an acquittal.' Reyes v. State, 151 Neb. 636, 38 N. W. 2d 539. See, also, Jeppesen v. State, *supra.*

" 'It is the province of the jury to determine the circumstances surrounding, and which shed light upon, the alleged crime; and if, assuming as proved the facts which the evidence tends to establish, they can be accounted for upon no rational theory which does not include the guilt of the accused, the proof cannot, as a matter of law, be said to have failed.' Morgan v. State, 51 Neb. 672, 71 N. W. 788. See, also, Kitts v. State, 153 Neb. 784, 46 N. W. 2d 158; Hoffman v. State, *supra.*"

We said in Sedlacek v. State, 166 Neb. 736, 90 N. W. 2d 340: "The test by which to determine the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect accused with the crime charged are of such conclusive nature as to exclude every reasonable hypothesis except that of his guilt." In my judgment the evidence adduced does not meet this test. There is still an interval of time when someone else might have been in the office and have had the same opportunity the evidence indicates was presented to the defendant. Glessinger conceded that it was possible for others to have been in the office while he was gone. The most we can say about the evidence adduced is that the defendant had an opportunity to commit the crime and there is a strong suspicion that he did, but this falls far short of proving him guilty beyond a reasonable doubt. There is no question but that the actions of the defendant were to say the least very suspicious, yet suspicion does not suffice for evidence. Without some proof that no one else entered the building during the interval when Glessinger was gone, or connecting the defendant in some way with the fruits of larceny, it is not possible to say that the evidence adduced is of such conclusive nature as to produce to a reasonable and moral certainty that the

defendant committed the offense beyond a reasonable doubt.

The following quotation from Reyes v. State, 151 Neb. 636, 38 N. W. 2d 539, is particularly meaningful in this case: "When circumstantial evidence is relied upon, the facts and circumstances must form a complete chain and point directly to the guilt of the accused in such a conclusive way as to exclude any other reasonable conclusion, every element essential to the conclusion must be proved by competent evidence beyond a reasonable doubt, and the existence of a reasonable doubt as to any one of them requires an acquittal. Treppish v. State, *supra;* Lowe v. State, *supra;* Walbridge v. State, 13 Neb. 236, 13 N. W. 209; 20 Am. Jur., Evidence, § 1217, p. 1068; Vinciquerra v. State, *supra;* Harms v. State, *supra;* State v. Hooper, 222 Iowa 481, 269 N. W. 431; State v. Sigman, 220 Iowa 146, 261 N. W. 538; State v. Lewis, 69 W. Va. 472, 72 S. E. 475, Ann. Cas. 1913A 1203; State v. Suitor, 43 Mont. 31, 114 P. 112, Ann. Cas. 1912C 230; 23 C. J. S., Criminal Law, § 907, pp. 154 to 156.

"Caution should be exercised in drawing inferences from circumstances proved in a criminal case. Suspicion or speculation may never justify a conviction. Circumstantial evidence as a basis of a conviction of crime should be acted on and weighed cautiously, and this is especially true where the crime is heinous. A conviction should not be based on the weakness of the status of the accused, the embarrassing position in which he finds himself, or the mere fact that some unfavorable circumstances are not satisfactorily explained. In determining the sufficiency of circumstantial evidence to support a conviction, each case must be determined on its own peculiar circumstances. Bourne v. State, 116 Neb. 141, 216 N. W. 173; Lowe v. State, *supra;* O'Neil v. State, 118 Neb. 360, 224 N. W. 855; Vinciquerra v. State, *supra;* Hiner v. State, 196 Ind. 594, 149 N. W. 168; State v. Pienick, *supra;* 23 C. J. S., Criminal Law, § 907, p. 146."

The offense charged is not supported by sufficient evidence. Defendant's motion to dismiss, made at the conclusion of all of the evidence, should have been sustained. The judgment of the district court should be reversed and the cause remanded with directions to dismiss.

I am authorized to state that Justices Boslaugh and Brower join in this dissent.