STATE OF NEBRASKA, APPELLEE, V. ROBERT ALLEN COLEMAN, APPELLANT.

STATE OF NEBRASKA, APPELLEE, V. JAMES D. HAINLINE, APPELLANT.

184 N. W. 2d 732

Filed March 19, 1971. Nos. 37683, 37684.

572

Padley & Dudden, for appellants.

Clarence A. H. Meyer. Attorney General, and Harold S. Salter, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

The defendants, Robert Allen Coleman and James D. Hainline, were charged and tried by information on

several counts in the district court for Phelps County, summarized as follows: (a) With breaking and entering Strong Brothers, Inc., with intent to steal; (b) with feloniously and maliciously shooting at Roger D. Johnson and Dwayne C. Newman with intent to kill, wound, or maim; (c) with breaking and entering Lumpkin's Foodliner, Inc., with intent to steal; (d) with using firearms in the commission of a burglary at Strong Brothers, Inc.; and (e) stealing $1,263.97 from Lumpkin's Foodliner, Inc., all of which is alleged to have occurred on or about October 30, 1969. Hainline was additionally charged with being a habitual criminal. The defendants entered pleas of not guilty. A trial was had. The jury returned verdicts of guilty and defendants have appealed.

The evidence is that several police officers were in the Holdrege police station about 1:30 a.m., on October 30, 1969, when they heard talking and noise coming over an electric surveillance device connected to Strong Brothers garage. Three officers went immediately to the garage. One of the officers looked in and saw two men moving about within the dimly lighted building. One of the officers had stationed himself outside an outside door. The two men approached this door, but on being challenged they left the immediate area. After considerable moving about by the two men on the inside, two shots were fired from the inside of the building. Very shortly thereafter numerous shots were fired both inside and outside the building. In the last exchange of shots, Officer Roger Johnson was hit and incapacitated. It was later learned that the two men sought to leave the building by a north door where Johnson was on guard, engaged in a shooting melee resulting in Johnson's injury, and fled on foot to the north.

At approximately 2 a.m., the officers began trailing the two men by their tracks in a light snow which had been falling since midnight. Several police officers

participated in the trailing which led them through alleys, streets, and open spaces in the north part of Holdrege. After going north of the city, the tracks turned easterly through a farm area and then south to an abandoned farmstead several miles south and east of Holdrege where, about 7 a.m., defendants were taken into custody from their hiding place.

There is evidence by a state trooper that he found an open window by which entry to the garage could have been gained. There is also evidence by an employee of the garage that the window was closed when he left the garage at the close of work the evening before. Officer Johnson testified that when he saw the two men moving around in the garage building, one of the intruders was carrying what appeared to be a walkie-talkie because there was an aerial on it. Some shell casings and one bullet were found in and around the building. Some of the shell casings were .32 caliber fitting a gun or guns not carried by any of the law enforcement officers. Bullet holes were found inside the garage, a clear indication they were fired by guns inside the garage. Various items of evidence were found along the trail including a walkie-talkie, two gun holsters and a belt, a flashlight, and two guns. An F.B.I. agent, a gun expert, testified that the shell casings found were fired from these two guns.

The office safe in the garage was found on its back unopened, but showing marks that indicated an attempt had been made to pry it open. Pry bars and large screwdrivers not belonging to the Strong garage were found in the parts room of the building. The tracks followed in the light snow were described by the trackers as follows: One set of tracks appeared to be made by a smooth-soled shoe and the other set by a webbed, grated type of shoe sole. When taken into custody, defendants were wearing shoes corresponding to the track descriptions. Near the point

of the apprehension, two moneybags, one with a drawstring and the other with a zipper, were found in nearby pine trees. One carried the name of a Tulsa, Oklahoma, bank printed thereon, the other the name of the First Security Bank of Holdrege. A pair of light tan leather gloves was found with one of the moneybags in the south pine tree. The other moneybag was wrapped snugly around a branch, very close to the trunk of the north pine tree.

It was shown by the evidence, consisting of 1,161 pages of testimony, that the two men in the building on the arrival of the police were dressed in heavy clothing, one wearing a sweatshirt and coveralls and the other a leather jacket and coveralls. This fits the description of the clothing worn by Coleman and Hainline at the time of their arrest. The two men left the garage at the time Johnson was wounded by gunfire and took off to the north. They were shot at by the police at this time. They were trailed by the tracks they made in the light snow and muddy ground. The trail at one place indicated the men had separated and come back together later on the trail. After trailing the men to the point of apprehension, the police and others retraced their steps on the trail and found the objects testified to which, on the theory of the State, had been discarded by the defendants during their flight from the scene of the crimes. The evidence is clear that the defendants were fleeing from the law enfdrcement officers, sometimes walking and sometimes running, as testified to by the officers from the condition of the tracks as they observed them.

The State's evidence shows that on the same morning of the robbery of Strong Brothers garage, an employee of Lumpkin's Foodliner found the back door of the store unlatched when he reported for work. He went toward the office and found the safe open and lying in one of the aisles. The police were called. It was found that $1,263.97, mostly in $1 and $5 bills,

were missing from the store. The safe had been pried open and a hasp had been loosened on the back door. Some paint scrapings were taken from the pry bars and screwdrivers which appear similar to that on the safes and locks but not in sufficient quantities to conclusively establish that they were identically the same. One of the three moneybags numbered 1, 2, and 3 was missing. The number 2 bag was one of the two moneybags found at the time of the apprehension of the defendants. It contained no money. When taken into custody, defendant Coleman had the sum of $278 in currency and $2.08 in change on his person. Hainline had $126.10 on his person.

There can be little doubt that the evidence of the State, although almost wholly circumstantial, is sufficient if believed to sustain the verdict of the jury as to the robbery of the Strong Brothers garage, in the absence of prejudicial error in the trial of the case and the instructions to the jury. As to the robbery of Lumpkin's Foodliner, we think the evidence was also sufficient on a somewhat different basis. In that phase of the case, we point out the following pertinent circumstances: The two robberies occurred in the nighttime at substantially the same time and place. A substantial sum of money was found on the person of one of the defendants. One of the money sacks belonging to Lumpkin's Foodliner was found hidden in an evergreen tree close to the point of apprehension of the defendants. No other persons were observed in the neighborhood who could have committed the act. While some attempt was made to point the finger of suspicion at an employee of Lumpkin's Foodliner who quit his employment and turned in his key the next morning, there is no evidence whatever that this was anything more than coincidental. The supervisory officer of Lumpkin's Foodliner testified to the reliability of this employee. The employee testified as to his whereabouts during the night of the robbery

and to discussing the termination of his employment
with his parents before he had knowledge of the rob-
bery. In any event, the question of credibility and
weight of evidence is for the jury which it determined
adversely to any contention of the defendants. It is
true that the manner of entry into the Lumpkin's
Foodliner building was not determined, but this is not
a controlling factor where it is shown that entry was in
some manner unlawfully made. We conclude that the
evidence is sufficient to make a prima facie case.

The evidence offered by the defendants is substan-
tially as follows: Defendant Hainline testified that he
was 32 years of age, married, and the father of six
children. He went to the 10th grade in school and took
courses in refrigeration school. He has been self-em-
ployed as a plumber and refrigeration mechanic. He
has worked with Coleman on automobiles and has en-
gaged in custom welding. He and Coleman were driv-
ing a pickup to Denver to buy automobile parts. They
had a toolbox with them. They went south from Kear-
ney to U.S. Highway No. 6, ran out of gas 4 or 5 miles
east of Holdrege, and hitchhiked to the edge of that
city. They walked into town and went to the Co-op gas
station which was closed. He said he found two empty
moneybags lying on the station drive which he put in
his pocket and they went up the street. He said that
half way up the middle of the block, they were shot at
and they ran north up an alley. In the second block they
ran into two men getting in a car. They ducked behind
a garage and watched. Other armed persons were ob-
served in the area and they decided to return to their
stalled pickup. They got mixed up in their directions
and ran into more gunfire. They wound up at a farm-
stead where they were apprehended. They took off
their gloves and removed a flashlight and the two
moneybags and placed them in a tree. He stated that
he had $120 or $130 when arrested but never had $1,-
263.97 in his possession. He said they had never entered

Strong's garage. He stated they had no firearms, never had the guns offered in evidence, and never fired at officers Johnson or Newman or any other person. He said he picked up the moneybags because he did not believe in throwing things away. He said they did not dispose of any articles along the way and had never seen the burglary tools offered in evidence. He stated he was never in Lumpkin's Foodliner or near the place. He admitted that he had previously been convicted of a felony.

Defendant Coleman testified that he was 28 years of age, married, and the father of one child. He went to school as far as the 10th grade. He gave his trade as that of automobile mechanic. His main hobby was drag racing. His testimony was very similar to that of Hainline. He stated that they ran, as testified by Hainline, because he did not want to get involved with the police in a strange town. He admitted he had previously been convicted of a felony. He admitted ownership of the clothing he was wearing and one flashlight. He denied knowledge of all other exhibits offered against him. He denied entering or being near Lumpkin's Foodliner or Strong Brothers garage.

The evidence is circumstantial. The jury was properly instructed as to the credibility and weight of such evidence. On appeal, the question is whether or not the evidence is sufficient to sustain some rational theory of guilt. State v. Ohler, 178 Neb. 596, 134 N. W. 2d 265; State v. Williams, 183 Neb. 257, 159 N. W. 2d 549. It is fundamental that a person charged with crime may be convicted on circumstantial evidence only. State v. Williams, *supra*. The facts and circumstances of this case are sufficient to sustain the jury's finding of guilt. It is true that the evidence of the State and that of the defendants is conflicting. The jury resolved those conflicts against the defendants and for the State, and, since the State's evidence believed by the jury sustains a rational theory of guilt, no error can properly be made

that the evidence is insufficient to sustain the convictions.

The defendants assign as error the ruling of the trial court in sustaining an objection to an offer of proof during the cross-examination of the witness Roger Johnson and to the comments of the trial court in sustaining such objection. The witness Johnson testified that the two men who left the garage building shot at him and that he was wounded by one of the shots fired by one of them. The bullet which hit him was not removed from his body and consequently was not identified as having been fired by any particular gun. Questions were asked on cross-examination about the witness' inability to identify the bullet, the description of the man who shot him, and whether or not he suffered from a disability involving blackouts. An objection to the latter as to materiality and relevancy was sustained. The offer of proof was than an examination of his clothing would show powder burns indicating a self-inflicted wound. We submit that the proferred evidence was not relevant to a charge against defendants of shooting with intent to kill, wound, or maim. If offered for impeachment purposes, it was not material since it was on a matter not testified to by the witness and was not an element of the crime charged. The witness was not called as a witness by the defendants, nor were the doctors and nurses called to prove the facts offered to be shown if, as asserted, they were material to the defense. The extent of the cross-examination under the circumstances shown was clearly in the area of the discretion of the trial court. Pierce v. State, 173 Neb. 319, 113 N. W. 2d 333; State v. Brown, 174 Neb. 387, 118 N. W. 2d 328. We find no error that could in any way prejudice the rights of the defendants. The trial court, in ruling on an objection to evidence, did say on one occasion: "I think you are badgering the witness." Defendants assert this was prejudicial error requiring a new trial. The manner in which it arose and the further fact that no objection was made thereto, precludes any valid claim

of prejudicial error. The defendants assign as error the admission of some 24 exhibits. Most of them are a part of the chain of circumstances tending to sustain the charges made against these defendants. We find no error in their admission.

The witness, Merle J. Divis, a member of the Nebraska Safety Patrol, testified in the case. He made a report to his superiors to which he made no reference in his testimony. Defendants requested that the report · be produced. An objection to its production was sustained. Defendants' counsel, although he had never seen the report, claims that he was entitled to it for impeachment purposes. The notes and reports of investigating officers engaged in law enforcement are subject to production at a trial where used to refresh the officer's memory or where a foundation has been properly laid for the impeachment of the officer. Otherwise the use of such notes and reports rests within the sound discretion of the trial court. In the instant case, the notes and reports were not used by the witness to refresh his memory nor was a basis for the impeachment of the witness laid. The trial court refused to compel the production of the notes or reports. We find no error, their admission being within the discretion of the court which does not appear to have been abused. State v. Williams, *supra*.

Defendants complain of the giving of instructions Nos. 3, 8, 17, and 20. We have examined instructions Nos. 3, 8, and 17 and find them to be correct. They are as applicable to a case based on circumstantial evidence as one proved by direct evidence. The complaint against instruction No. 20 is that it consists of the first 8 paragraphs of NJI 14.81, but fails to give paragraph 9, which is asserted to be error. Paragraph 9 referred to states: "(you should consider:) * * * Evidence of previous statements or conduct inconsistent with their testimony at this trial (if any such evidence has been adduced):." NJI 14.81, p. 342. We find no inconsistent statement by

any State witness other than the inconsequential differences that occur in the testimony of most witnesses. We find no prejudice to the defendants in failing to give paragraph 9 in connection with instruction No. 20 as given. We find that the case was fairly submitted to the jury.

The defendants assert that the county attorney's argument to the jury was prejudicial to the rights of the defendants in that the county attorney in effect testified to facts outside the record. A county attorney may, of course, draw inferences from the evidence in presenting his case to the jury. Kennedy v. State, 171 Neb. 160, 105 N. W. 2d 710. This is particularly true in a circumstantial evidence case. We find no reversible error based on the misconduct of the prosecutor. See Cramer v. State, 145 Neb. 88, 15 N. W. 2d 323.

We have examined other claimed errors and find them to be without merit. This case was fairly tried, the material evidence fully presented, the jury properly instructed, and its verdict is supported by evidence. We find no reason to interfere with the verdict of the jury, and the judgment of the trial court based thereon is affirmed.

AFFIRMED.